IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Paganico and Trona Paganico,    :
                  Appellants    :
   :
           v.    :
   :
Zoning Hearing Board of the    :    No. 9 C.D. 2019
Municipality of Penn Hills    :    Submitted: August 30, 2019


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY[1]                            FILED: February 24, 2020


Robert and Trona Paganico (Objectors) appeal from the Allegheny County Common Pleas Court's (trial court) December 4, 2018 order affirming the Zoning Hearing Board of the Municipality of Penn Hills' (ZHB) decision granting Veterans Place of Washington Boulevard (Veterans Place) a use variance. The sole issue before this Court is whether the ZHB properly granted Veterans Place a use variance. After review, we affirm.

Veterans Place owns a triangular, approximately 3.7-acre parcel of vacant land, zoned R-1 residential, on Jefferson Road in Penn Hills (lot and block #539-N-172) (Property). The Property was a former sewage treatment facility, which is now a fill area. The Property has a 20- to 30-foot-wide sewer easement running through its center. It has varying topography that includes flat areas, sharp inclines and declines, and is covered with poorly compacted fill materials.

On February 28, 2018, Veterans Place's Executive Director Marlon Ferguson (Ferguson) filed a use variance application with Penn Hills' Code

---

[1] This matter was reassigned to the author on January 31, 2020.

Enforcement Department. In his request, Ferguson sought permission on behalf of Veterans Place to renovate the Property to serve homeless veterans transitioning from homelessness to permanent residency. He specifically proposed to build a group care facility and 14 micro homes on the Property. Each micro home would provide approximately 500 square feet of living space for an individual veteran. A private drive servicing all homes would be accessible via Jefferson Road. The group care facility would consist of a 2-story, 7,000-square-foot building built on a slab, where Veterans Place would host events and outreach functions for the community, veterans associations and others as part of Veterans Place's mission.

On April 25, 2018, the ZHB held a hearing and voted unanimously in favor of granting Veterans Place's use variance application. On April 30, 2018, the ZHB issued its decision granting the use variance conditioned upon the planning commission's site plan approval. On May 25, 2018, Objectors appealed from the ZHB's decision to the trial court. On December 4, 2018, the trial court affirmed the ZHB's decision. Objectors appealed to this Court.[2]

Initially, Section 15.11(C) of the Penn Hills Ordinance (Ordinance) provides, in pertinent part:

> No variance shall be granted unless the [ZHB] determines and fully describes in its findings, the following:
>
> (1) That there are unique physical circumstances or conditions, including irregularity, shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance,

---

[2] "In an appeal from a court of common pleas' order affirming a decision of a zoning hearing board, where the common pleas court takes no additional evidence, our review is limited to considering whether the zoning hearing board abused its discretion or erred as a matter of law." *DiMattio v. Millcreek Twp. Zoning Hearing Bd.*, 147 A.3d 969, 974 (Pa. Cmwlth. 2016). "The zoning hearing board abuses its discretion when it issues findings of fact that are not supported by substantial record evidence[.]" *Id.*

in the neighborhood or district in which the property is locate[d].

(2) That, because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this ordinance, and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the app[licant].

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Ordinance § 15.11.C.[3]

Objectors argue that Veterans Place has not satisfied the second (property cannot be developed) and fifth (minimum variance) requirements for a use variance. With respect to the second requirement, Objectors contend that the Property could be used for the construction of a single-family residence in accordance with the Ordinance. Veterans Place rejoins that it demonstrated that uses otherwise permitted by the Ordinance are not possible due to the unique features of the

---

[3] Objectors, the trial court, and Veterans Place all claim that the applicable requirements are set forth in Section 910.2(a) of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by Section 2 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a). *See* Objectors' Am. Br. at 8-9; Trial Ct. Op. at 2-3; Veterans Place Br. at 15-16. However, this assertion is incorrect, as Penn Hills has enacted its own zoning ordinance. *See* Penn Hills Zoning Ordinance (2004), *as amended*, available at http://pennhills.org/wpcontent/uploads/2017/10/Penn-Hills-Zoning-Ordinance.pdf (last visited February 20, 2020). For reasons unknown, the trial court record contains an incomplete version of the Ordinance, which omits Section 15.11(C) of the Ordinance. *See* Original Record at 53-72.

Property, or would only be possible at a prohibitive expense, which is the proper standard for a use variance.

> [The Pennsylvania Supreme] Court has repeatedly made clear that in establishing hardship, an applicant for a variance is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose. On several occasions, we have reversed the Commonwealth Court when it had relied on such a standard for unnecessary hardship in reversing the grant of a variance. Showing that the property at issue is 'valueless' unless the requested variance is granted 'is but one way to reach a finding of unnecessary hardship; it is not the only factor nor the conclusive factor in resolving a variance request.' Rather, 'multiple factors are to be taken into account when assessing whether unnecessary hardship has been established.'

*Marshall v. City of Phila.*, 97 A.3d 323, 330 (Pa. 2014) (citations omitted) (quoting *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 48 (Pa. 1998)).

> Here, Veterans Place's expert engineer, David Heath (Heath) testified:

> Q. What do you see as the main challenge for any attempt to develop this particular [P]roperty?

> A. Well, there's [sic] several site challenges when it comes to development. As discussed previously, the site or the [P]roperty itself is triangular in shape and it - essentially, a valley from the one point of the triangle towards the hypotenuse, which runs stream [sic]. It also has steep slopes on the opposite side of this proposed development that go to the adjacent street. There's [sic] also streams that come down from that street, drainage that enter there.

> Also, some of the soils --- fill site has a bad name, but this was not properly --- the fill was not properly compacted, there was no oversight. So the material that we encountered is very large construction materials in terms of concrete, paving experiencing voids.

Q. Are there any economic challenges to developing this [P]roperty in accordance with the uses allowed under the [O]rdinance?

A. Well, this type of fill is problematic, and a little excerpt from our geo-technical investigation; we did some test moorings just January 23rd of this year for the micro homes site. We experienced [9] to 32 feet of fill, varying compressibility, without undercut and backfill seem to provide a more mutual variant subgrades with the potential for detrimental differential foundation and force that floor slab settlement to exist. Such settlements could result in cracking foundations, walls, uneven floors, out of plum trim and finishes. The cost of the undercut and backfill [] for a single family dwelling, would be disproportionate compared to the proposed community center.

Supplemental Reproduced Record (S.R.R.) at 146b-148b. Heath expounded:

Q. So I would ask you to please go through each of these uses and explain why they're either not possible, due to the physical nature of the [P]roperty, or they're not possible because conforming into a use would be cost prohibitive?

A. Okay. First permitted use; single[-]family residence. Based on the fill of the --- that I previously discussed, the burden of over excavation render [] significant[] site costs to an individual home. It would also be prohibitive the way the [sewer easement] is run, it's running through the property, it renders very little developmentable [sic] property for a home.

So that's where it would stand with [a] single[-]family [home].

S.R.R. at 150b.

The ZHB determined:

Heath[] reviewed the other legal uses of the land and concluded that none of the other uses could be developed in compliance with the [Ordinance].

The [ZHB] found his testimony competent and credible. Residential uses were not possible because of the expense of correcting the improper placement of fill on the site and

5

> because there is [a] sewer easement through the center of the [P]roperty, the same problem applies to other residential uses.

ZHB Dec. at 3. Accordingly, the ZHB's conclusion that the Property could not be developed in accordance with the Ordinance due to the Property's physical circumstances or conditions is supported by substantial evidence.

Concerning the fifth requirement, Objectors contend that substantial evidence does not support the ZHB's conclusion that the use variance is the minimum variance necessary to afford relief and represents the least modification possible of the Ordinance.

With respect to whether a use variance is the minimum variance necessary to afford relief, this Court has explained:

> [W]e will address the [] argument that the trial court erred in affirming the [zoning board of adjustment's (ZBA)] grant of the variance because the [applicant] did not request the minimum variance necessary. The [objector] contends that the variance that the ZBA granted improperly exceeds the minimum variance necessary to afford relief to [the applicant]. We note, however, that **this minimization requirement contained in both the** [**Pennsylvania Municipalities Planning Code**[4] (] **MPC**[)] **and the** [**Philadelphia**] **Zoning Code appears to pertain more to dimensional variance requests**. . . . **The rule of minimization has clear application in the context of a dimensional variance**, because an applicant should be entitled to a modification of a dimensional zoning requirement only to the extent necessary to grant relief. Otherwise, an adjudicator or reviewing court could provide relief that goes beyond the necessity of curing an unnecessary hardship under the applicable zoning ordinance. **In the context of a use variance, the criteria other than the minimization requirement serve the purpose of placing restrictions on the exercise of a**

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

**zoning board's inherent power to exercise discretion in the granting of a variance**.[5]

*S. of S. St. Neighborhood Ass'n v. Phila. Zoning Bd. of Adjustment*, 54 A.3d 115, 124 (Pa. Cmwlth. 2012) (emphasis added);[6] *see also Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513 (Pa. Cmwlth. 2018); *In re Appeal of Redeemed Christian Church of God, Living Spring Miracle Ctr.* (Pa. Cmwlth. No. 930 C.D. 2015, filed December 28, 2016); *Oakbrook Fire Co. No. 14 Relief Ass'n v. City of Reading Zoning Hearing Bd.* (Pa. Cmwlth. No. 697 C.D. 2013, filed January 8, 2014).[7]

This Court recognizes that the present case does not involve the MPC or the Philadelphia Zoning Code. However, the same rationale applies herein because the instant matter involves a use variance wherein the ZHB determined that Veterans Place established the other four variance requirements, i.e., unique physical circumstances or conditions, which prevent development of the property in strict conformity with the ordinance, the hardship was not self-created, and the variance will not alter the essential character of the neighborhood. As our Court has consistently recognized, these criteria serve to restrict the ZHB's inherent power to exercise discretion in granting variances. The Court is not holding that the minimum variance necessary is not relevant, or does not apply; rather, that although a minimum variance is difficult to assess in use variance cases compared to dimensional variance cases, Veterans Place has satisfied that requirement herein.

---

[5] Here, the ZHB determined, and this Court agrees, that Veterans Place met the unnecessary hardship criteria for a use variance.

[6] Disapproved on other grounds by *Scott v. City of Philadelphia Zoning Board of Adjustment*, 126 A.3d 938 (Pa. 2015).

[7] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

Here, Ferguson expressly declared:

Q. The fifth and final factor [is], if authorized, will this use variance represent the minimum variance that will afford relief to represent the least modification possible under the [Ordinance]?

A. Yes.

Q. Are you asking for anything that's significantly different from what is already available under the [O]rdinance?

A. No.

. . . .

Q. I'm going to hand you [. . .] this is [S]ection five of [Ordinance]. If you flip to page 47 almost to the back. At the top, for an R-1 zoning district, there are a number of conditional uses that are listed. Is it true that these conditional uses contemplate community involvement?

A. Yes.

Q. Could you give me some examples directly from the [O]rdinance?

A. Permission to use as church or rectory, cemetery, mausoleum, community facilities (non-profit), public or private recreational facilities, forestry, funeral homes, telecommunication towers, facility buildings, schools, offices, nurseries, public utilities and public services, senior center, senior citizen housing, planned unit residential developments.

Q. So the project - so these projects that are authorized by the [O]rdinance, contemplate community involvement.

Correct?

A. Yes.

Q. Is the project that you proposed here, do you anticipate that it will be less of an impact than some of these conditional uses that are already in the [O]rdinance?

A. Yes.

8

Q. Could you provide an example?

A. Like for instance, churches.

With churches you have a large parking lot, a lot of activity. We won't have those types of activities at our resource center.

S.R.R. at 138b-141b. Because a use variance marks a qualitative rather than a quantitative departure from an existing ordinance, the above-quoted testimony is sufficient to support the ZHB's conclusion that the variance granted herein was the minimum necessary to afford relief.[8] *See Redeemed Christian Church*; *Oakbrook*.

The *Redeemed Christian Church* Court acknowledged the *South of South Street* Court's holding that "the question of whether [the a]ppellant has asked for the minimum variance necessary to provide relief is difficult to assess compared to dimensional variance cases, but [] conclude[d] that to the extent such a requirement is present, [the a]ppellant ha[d] satisfied it." *Redeemed Christian Church*, slip op. at 18 n.7. Specifically, the *Redeemed Christian Church* Court concluded:

> The proposed educational, training and religious uses would require modifications only to approximately half of the interior of the [b]uilding and only to that portion of the [b]uilding that [the a]ppellant was unable to use as office space and that represented the hardship. **The proposed uses, particularly the training and educational functions of the [b]uilding, are also substantially similar to permitted commercial uses and therefore have a minimal impact on the use of neighboring property owners and the health of the [Business Park] District as a whole**.

---

[8] The Concurrence/Dissent states: "In my opinion, [] Ferguson's bald, unsupported comments fall woefully short of constituting substantial evidence." *Paganico v. Zoning Hearing Bd. of Municipality of Penn Hills*, ___ A.3d ___, ___ (Ceisler J., concurring/dissenting), slip op. at 2. However, "[s]ubstantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *DiMattio*, 147 A.3d at 974 (quoting *Eichlin v. Zoning Hearing Bd. of New Hope Borough*, 671 A.2d 1173, 1175 (Pa. Cmwlth. 1996)). Clearly, the above-quoted testimony fits within that definition.

9

Slip op. at 17-18 (emphasis added). Likewise here, the proposed use, particularly the group care facility, is substantially similar to the permitted uses of, *inter alia*, a church or non-profit community facility and "therefore ha[s] a minimal impact on the use of neighboring property." *Id.*

Similarly, in *Oakbrook*, this Court found that, under the MPC, the minimization requirement is not relevant in use variance cases. However, the *Oakbrook* Court opined that, if it was relevant and applicable, the fact that "the property and structure cannot be used for permitted residential purposes or for modern firefighting purposes; and **the proposed use will be less intense than the neighboring [a]ssociation social quarters** because fewer patrons can be served at the proposed brew pub and there is on-site parking[,]" "support the conclusion that the minimization requirement . . . is satisfied." Slip op. at 11 n.8 (emphasis added).

Here, the ZHB stated:

> Residential uses were not possible . . . , the same problem applies to other residential uses. Conditional uses are not possible consistent with the [Ordinance]. . . . The same problems apply to special exceptions such as funeral home[s] or Planned Residential Developments. Senior Citizen housing is not economically feasible. . . .

> A traffic study was presented by [] Heath that established that the development will have a negligible effect on the area. This conclusion was well supported by the traffic study.

> The proposed use of [the P]roperty is essentially residential. The only non-residential aspect of this use is the group care building, but this use is generally consistent with the residential character of the neighborhood.

ZHB Dec. at 3. Accordingly, the ZHB's conclusion that the granted variance was the minimum variance necessary to afford relief is supported by substantial evidence.

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Paganico and Trona Paganico,   :
               Appellants   :
                               :
           v.                   :
                               :
Zoning Hearing Board of the      :     No. 9 C.D. 2019
Municipality of Penn Hills       :

## O R D E R

AND NOW, this 24th day of February, 2020, the Allegheny County Common Pleas Court's December 4, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Paganico and Trona Paganico, :
                    Appellants          :
                                        :
        v.                              :  No. 9 C.D. 2019
                                        :  SUBMITTED:  August 30, 2019
Zoning Hearing Board of the             :
Municipality of Penn Hills             :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

CONCURRING AND DISSENTING OPINION
BY JUDGE CEISLER                                FILED:  February 24, 2020

I concur with the majority that substantial evidence supports the Zoning Hearing Board of the Municipality of Penn Hills' (Board) finding that Veterans Place of Washington Boulevard's (Veterans Place) property could not be used in a manner which complies with Penn Hills' Zoning Ordinance. However, I cannot join with the majority in full, as I respectfully submit that substantial evidence does not support the Board's finding that Veterans Place's desired use variance is the minimum variance necessary to afford relief.

The Penn Hills Zoning Ordinance clearly tasks the Board with making a specific determination as to whether, and why, a desired use variance provides the minimum relief necessary to enable development. *See* PENN HILLS, PA., ZONING ORDINANCE § 15.11.C (2004). Though the Board did make such a determination here, this conclusion is simply not supported by substantial record evidence. While Marlon Ferguson, Veterans Place's executive director, did briefly address the minimum variance issue, his testimony on this point is vague and conclusory. Mr.

Ferguson was asked whether his organization was seeking the minimum variance necessary to afford relief. Without explanation, Mr. Ferguson, simply replied, "Yes." Board Hrg. Tr., 4/25/18, at 25. Shortly thereafter, Mr. Ferguson was asked whether the proposed use, *i.e.*, the group facility and micro homes, would be less intense than the multitude of conditional uses permitted in the Zoning Ordinance, to which he again merely replied, "Yes." *Id.* at 27. When prodded to give an example of how this proposed use would be comparatively less intense than an authorized conditional use, Mr. Ferguson stated that a church would host certain, unspecified "activities" that would not occur at the proposed group facility and micro homes. *Id.* at 27-28. In my opinion, Mr. Ferguson's bald, unsupported comments fall woefully short of constituting substantial evidence.

There is no doubt that Veterans Place's mission is noble and that our veterans absolutely deserve assistance with reintegration into civilian life. However, I find the majority's holding sets the evidentiary bar far too low, which has the practical effect of nearly obliterating the Penn Hills Zoning Ordinance's minimum relief requirement in the context of use variances. I therefore respectfully dissent in part, out of concern that the majority's holding in this situation will be cited to similar effect in future cases, thereby improperly relaxing the heavy burden placed upon use variance applicants in other analogous matters.

ELLEN CEISLER, Judge

EC - 2