Carol BAKER,

v.

CHARTIERS TOWNSHIP ZONING HEARING BOARD and Chartiers Township and Chartiers Township Board of Supervisors and William H. Martin, Inc.

Appeal of CHARTIERS TOWNSHIP, and Chartiers Township Board of Supervisors, Appellants.

Carol BAKER,

v.

CHARTIERS TOWNSHIP ZONING HEARING BOARD and Chartiers Township and Chartiers Township Board of Supervisors and William H. Martin, Inc.

Appeal of WILLIAM H. MARTIN, INC., Appellant.

Commonwealth Court of Pennsylvania.

Argued March 14, 1996.
Decided May 7, 1996.
Reargument Denied July 15, 1996.

James P. Liekar, for Appellants, Chartiers Township and Chartiers Township Board of Supervisors.

Douglas R. Nolin, for Appellant, William H. Martin, Inc.

Peter M. Suwak, for Appellee, Carol Baker.

William A. Johnson, for Appellee, Chartiers Township Zoning Hearing Board.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

William H. Martin, Inc. (Martin), Chartiers Township (Township) and Chartiers Township Board of Supervisors (Board of Supervisors) (Appellants, collectively) appeal from orders of the Court of Common Pleas of Washington County (trial court), which reversed the orders of the Chartiers Township Zoning Hearing Board (ZHB) and the Board of Supervisors and granted the appeal of Carol Baker (Baker) from the grant of approval of the conditional use application filed by Martin, and from the rezoning of the land known as the Shaw farm. We affirm.

The relevant facts are as follows. On August 25, 1992, the Board of Supervisors amended the Township Zoning Ordinance which, among other zoning changes, resulted in the rezoning of the Shaw farm from an agricultural to an industrial district. The Shaw farm consists of approximately 221 acres of land, which is adjacent to a landfill operation owned or controlled by Martin. Martin had previously filed a request for rezoning of the Shaw farm on March 30, 1991, which was subsequently withdrawn and then resubmitted on December 27, 1991.

On September 24, 1992, Baker filed an appeal with the ZHB and the trial court,[1] challenging the validity of the zoning ordinance amendment. On December 15, 1992, the ZHB sent a letter to Baker informing her that pursuant to *City of Hermitage v. Zoning Hearing Board of the City of Hermitage*, 149 Pa.Cmwlth. 488, 613 A.2d 612 (1992), *appeal denied*, 533 Pa. 637, 621 A.2d 582 (1993), her appeal was not yet ripe for review by the ZHB because no permit had yet been requested by Martin, nor had Martin attempted to use the property in a manner consistent with the amended zoning regulations. Therefore, the ZHB declined to take any action on the basis that it did not have subject matter jurisdiction. On December 23,

---

1. The appeal to the trial court challenging the validity of the amendment is not part of this consolidated appeal, although the appeal to the ZHB is before this Court.

1992, Baker appealed this decision (*Hermitage* appeal) to the trial court, and at the same time, filed a notice of "deemed approval" claiming that because of the ZHB's failure to hold a timely hearing on her challenge to the validity of the amendment, her challenge was deemed approved. On January 21, 1993, Martin filed a protective appeal from the "deemed approval" notice ("deemed approval" appeal).

On February 3, 1992, following published notice of an upcoming hearing regarding Martin's conditional use application, Baker filed a second appeal to the ZHB contesting the validity of the zoning amendment. By letter of February 17, 1993, Baker was informed by the Township zoning officer that the hearing would be held within sixty (60) days of receipt of a completed ZHB hearing form and the application fee. On or about March 9, 1993, the application and fee were submitted.

On April 14, 1993, the Board of Supervisors granted approval of Martin's conditional use application for expansion of its local landfill operation onto the Shaw farm. On May 14, 1993, Baker filed an appeal from the conditional use approval to the trial court (conditional use appeal).

On April 21, 1993, the ZHB began a series of hearings on Baker's validity challenge to the amendments to the zoning ordinance. At the first hearing before the ZHB, Appellants raised the issue of a "deemed denial," based on the ZHB's failure to timely act on Baker's second appeal. On May 4, 1993 Baker filed an appeal from Martin's "deemed denial" argument ("deemed denial" appeal). The hearings on Baker's challenge to the ordinance's validity ended on July 14, 1993, and a decision was rendered on September 20, 1993, upholding the validity of the zoning amendment. On October 20, 1993, Baker appealed this decision (validity appeal) to the trial court.

The validity appeal was consolidated with Baker's *Hermitage* appeal, her "deemed approved" appeal, and her conditional use appeal, as well as with Martin's "deemed denial" appeal, for review by the trial court, which took no additional evidence. By opinion and order of the trial court on May 24, 1995, the ZHB's decision upholding the validity of the zoning amendment was reversed and vacated, as was the Township's grant of Martin's conditional use permit. It found all the other appeals moot. It is from this order that Martin appeals.

In zoning appeals, where the trial court takes no additional evidence, this Court's scope of review is limited to determining whether the zoning hearing board committed an abuse of discretion or an error of law. A conclusion that the zoning hearing board abused its discretion may be reached only if its findings are not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983); *Constantino v. Zoning Hearing Board of the Borough of Forest Hills,* 152 Pa.Cmwlth. 258, 618 A.2d 1193 (1992). Similarly, in an appeal from the decision of the Board of Supervisors regarding a conditional use permit, our scope of review is whether the Board of Supervisors committed an error of law or abused its discretion in approving Martin's application for a conditional use permit. *Brentwood Borough v. Cooper,* 60 Pa.Cmwlth. 462, 431 A.2d 1177 (1981).

The trial court determined that the ZHB committed an error of law when it concluded that the rezoning of the Shaw farm did not constitute spot zoning. The trial court's determination was based on a number of factors, including: (1) the failure of the Board of Supervisors to provide a full and fair examination of the impact which the rezoning would have on adjacent properties; (2) the special relationship between Martin and the Board of Supervisors which led to an expedited deliberation process to the detriment of the public interest; (3) the Township's knowing failure to comply with the statutory mandate to submit the comprehensive plan to the County Planning Commission for comparison with the rezoning request; and (4) the failure to consult a third-party expert, which, although not required by law, was absolutely necessary to protect the interests of all parties when land was to be used in such an environmentally volatile fashion.

Martin argues that Baker has not met her burden of proof to show that the rezoning was an illegal spot zone. In *Township of Plymouth v. County of Montgomery,* 109 Pa.Cmwlth. 200, 531 A.2d 49, 57 (1987), *appeal denied,* 520 Pa. 622, 554 A.2d 513 (1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1748, 104 L.Ed.2d 184 (1989), Judge Craig defined illegal spot zoning as, "zoning provisions adopted to control the use of a specific area of land without regard to the relationship of those land use controls to the overall plan and the general welfare of the community."

■ Spot zoning is more than an "island" of discriminatory zoning, the land area involved being only one of the determining factors. *Pace Resources, Inc. v. Shrewsbury Township Planning Commission,* 89 Pa. Cmwlth. 468, 492 A.2d 818 (1985). Rather, as held in *Township of Plymouth:*

> The key point is when a municipal governing body puts on blinders and confines its vision to just one isolated place or problem within the community, disregarding a community wide perspective, that body is not engaged in lawful zoning, which necessarily requires that the picture of the whole community be kept in mind while dividing it into compatibly related zones by ordinance enactments. In other words, legislating as to a spot is the antithesis of zoning....

*Township of Plymouth,* 531 A.2d at 57 (emphasis in original). In the *Township of Plymouth,* for example, the court concluded that the zoning regulations were adopted for the purpose of excluding a refuse disposal plant, and thus there was illegal spot zoning and not zoning for legitimate land planning purposes.

■ Martin argues that the rezoning of the Shaw farm was not a spot zone for a number of reasons. First, the Shaw farm is a considerably larger plot of land, 221 acres, than other areas found by our Courts to be the object of spot zoning. However, our Supreme Court has stated in *Commercial Properties, Inc. v. Peternel,* 418 Pa. 304, 311, 211 A.2d 514, 519 (1965), that, "[i]t makes no difference whether it is a one-quarter acre lot or a 50 acre industrial complex which is the subject of the rezoning. If it is aimed at preventing a theretofore legal use of *an integrated unit owned by one common interest,* the action cannot be supported as a valid zoning." (Emphasis added.) Here, the subject of the rezoning is one integrated unit, the former Shaw farm, owned by one interest, Martin. Therefore, the size of the area is not determinative of whether there has been spot zoning.

■ Next, Martin argues that there was no illegal spot zoning because the Shaw farm property is not an illegal spot separate and distinct from all surrounding property. Rather, the property is proximate to the existing Martin landfill area, and it therefore does not create an island surrounded by inconsistently zoned property. However, as Martin concedes, a zone can be a spot zone even if it is a peninsula surrounded on all but one side by inconsistently zoned land, as appears to be the case here.[2] *C.L. Associates v. Board of Supervisors of Montgomery Township,* 51 Pa.Cmwlth. 627, 415 A.2d 134 (1980). Therefore, this argument is not dispositive.

Martin further argues that because the Shaw farm rezoning was part of a larger rezoning of the Township, culminating in the amendment of the Township ordinance, there can be no spot zoning. The essence of this claim, though not explicitly stated, is that the Shaw farm rezoning occurred at the same time as other parcels in the Township were rezoned, and thus the authorities could not be engaging in rezoning without regard for the overall plan and the general welfare of the community.

■ We would agree that evidence of a rezoning of a specific parcel of land occurring within the context of a larger re-evaluation of the zoning map is relevant to the question of whether the specific rezoning constitutes spot zoning. However, this evidence, while relevant, is not dispositive, and if there are material factors indicating unlawful spot zon-

---

**2.** The parties have failed to provide to this Court a map which clearly delineates the zoning districts, the placement of the Shaw farm within these districts, and the rezoning which occurred as a result of the recent amendments.

ing, as were found here, then a given rezoned parcel of land may be held to be the object of spot zoning. To hold otherwise would be to improperly insulate from review all allegations of spot zoning if the rezoning of the contested parcel of land occurs during the process of amending the zoning ordinance.

One of the factors indicating spot zoning, and which was of particular concern to the trial court, was that the Township failed to comply with the Commonwealth's mandates regarding the submission of a comprehensive plan to the County Planning Commission for comparison with the rezoning request. This concern was compounded because the ZHB proceeded with its review of Baker's challenge to the rezoning with full knowledge that no such comparison had been made.

In a letter from Lewis Villoti of the County Planning Commission to the Board of Supervisors, dated August 11, 1992, Mr. Villoti notified the Board of Supervisors that he did not have a copy of the comprehensive plan on file and urged the Board of Supervisors to forward him a copy. The letter stated, "We would like to impress upon you the importance that the proposed amendment be in compliance with your comprehensive plan.... With the understanding that this proposed amendment is in compliance with your comprehensive plan, we have no objection to the amendment as submitted." (Supplemental R.R. at 181b.)

Thus, the County Planning Commission's approval of the zoning amendment was conditioned on its review of the amendment's compliance with the comprehensive plan. However, no copy of the plan was forwarded, and instead the Township chose to rezone without this approval.

Martin argues that the failure to obtain approval is of little importance because the law does not require that a zoning ordinance be consistent with a comprehensive plan. Martin cites 53 P.S. § 10303(c),[3] which states:

(c) Notwithstanding any other provision of the Act, no action by the governing body of a municipality shall be invalid nor shall the same be subject to challenge or appeal on the basis that such is inconsistent with, or fails to comply with, the provisions of the comprehensive plan.

Martin argues that because the comprehensive plan is merely a guideline, and not a mandatory restriction, the Township would have been totally within its legal rights to ignore the County Planning Commission's objections and proceed with the adoption of the amendment. Therefore, the fact that the County Planning Commission did not look at the Township comprehensive plan does not provide a basis on which to reverse the ZHB's decision.

However, 53 P.S. § 10303(b) requires that whenever a governing body has adopted a comprehensive plan, any subsequent amendments to the official map or zoning ordinance shall be submitted to the planning agency. The planning agency then has 45 days to make recommendations, including a specific statement regarding whether or not the proposed action is in accordance with the objectives of the comprehensive plan.

Baker thus argues that the County Planning Commission's failure to provide a specific statement, or compare the amendments to the plan, constituted a statutory violation and indicated that no thorough or detailed review had been accomplished. *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975).

 In *Pace Resources*, the irregularity of the zoning procedures, which showed that the governing body had not thoroughly reviewed the proposed rezoning, was a significant factor, along with other factors, including inconsistency with the comprehensive plan, which indicated to this Court that the proposed rezoning constituted arbitrary and unjustifiably discriminatory spot zoning. Similarly, here, the failure to submit the comprehensive plan to the County Planning Commission to determine whether or not the rezoning complies with the comprehensive plan indicates that the deliberation process

---

**3.** Section 303 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*.

was expedited to the detriment of the public interest.

The trial court also pointed to the absence of any private third-party expert to aid in its investigation of the impact of the rezoning, and to help the ZHB determine if Baker's environmental concerns were valid as evidence of questionable procedures. The trial court stated, "[c]ertainly, in reviewing a rezoning involving such an environmentally volatile use as a landfill objective, expertise is an absolute necessity to protect the interests of all parties involved." (Trial court opinion at 5, May 24, 1995). Martin argues that the law does not require the input of a professional planner or other third-party expert. Moreover, there was ample testimony from its witnesses on the efforts undertaken to assure that the rezoning benefited the Township.

The primary benefit to the Township, as argued in Martin's brief, arises from the host fee agreement which will generate significant income and has, in the past, helped the Township's general fund and enabled it to double its police department, improve road maintenance, and keep down the level of taxation in the Township. However, we have consistently held that tax base concerns cannot be decisive in a zoning case. *Brentwood Borough.* Thus, for example, in *Zajac v. Zoning Hearing Board of Mifflin Township,* 41 Pa.Cmwlth. 7, 398 A.2d 244 (1979), the municipality refused to grant a special exception application to a mobile home court, although its application complied fully with the ordinance's specifications, including density requirements. The zoning hearing board of Mifflin expressed its concerns regarding density and overcrowding in the schools stemming from the idea that the children of the families in the mobile home court would overburden township services, i.e. schools, without providing the necessary permanent tax base. Judge Craig dismissed the municipalities concerns on several grounds, and citing *Putney v. Township of Abington,* 176 Pa. Superior Ct. 463, 108 A.2d 134 (1954), held

that the alleged effect on the tax base cannot be dispositive.

Thus, the primary benefit to the Township, as argued by Martin, is a benefit that our case law recognizes should have relatively little impact on rezoning requests. Instead, our Supreme Court has held that we should consider the public health, safety, morals, and general welfare and how it relates to the Township's comprehensive plan, when reviewing the exercise of a Township's power to zone. *Pace, citing, Schubach v. Silver.*

■ Although the trial court refrained from labeling the rezoning of the Shaw farm, "contract zoning," which is a form of unlawful spot zoning where rezoning is permitted based on regulations and conditions devised by agreement between the municipality and the landowner, *Knight v. Lynn Township Zoning Hearing Board,* 130 Pa.Cmwlth. 617, 568 A.2d 1372 (1990), we agree with the trial court that the procedural irregularities indicate that the Board failed to make a full and fair examination of the impact of the rezoning in its attempt to accommodate Martin. Because of the sanitary landfill's prior and potential ability to generate funds from the host fee agreement, and because the host fees allow the Board of Supervisors to keep down taxes in the Township, the environmental impact of the rezoning, and its conformity with the comprehensive plan was not sufficiently explored.[4]

In *Mulac Appeal,* 418 Pa. 207, 210 A.2d 275 (1965), the Supreme Court indicated that there is no precise standard by which to determine whether a classification of property constitutes spot zoning. However, in considering all the factors which our courts have found relevant for determining whether discriminatory, spot zoning has occurred, we hold that the ZHB erred as a matter of law in its determination that the rezoning of the Shaw farm did not constitute spot zoning.

■ A conditional use provision in an ordinance, like a special exception, indicates legislative acceptance that the use is consistent with the zoning plan. *Brentwood Borough.*

---

4. In the Chartiers Township Board of Supervisors' Special Rezoning public hearing held on August 25, 1992, Supervisor Diesel justified her vote in favor of rezoning the Shaw farm solely on the basis of the Township's host fees. (Supplemental R.R. at 189(b).)

Because we have held that the rezoning of the Shaw farm from an agricultural to an industrial district was spot zoning and therefore invalid, Martin's proposed use of the Shaw farm for industrial purposes is not consistent with the zoning of that parcel of land, and therefore the Township's grant of Martin's conditional use application must be reversed.

Finally, Martin does not renew its argument that Baker's challenge should have been "deemed denied." However, Martin does argue that Baker is not entitled to a deemed decision in her favor, pursuant to Section 908.9 of the MPC, 53 P.S. § 10908(9), as a result of the ZHB's failure to hold a timely hearing on Baker's September 24, 1992 challenge to the validity of the zoning ordinance amendment passed by the Board of Supervisors. However, because we affirm the trial court's decision in her favor, the issue of whether Baker is entitled to a "deemed decision" in her favor is moot.

Accordingly, we affirm the decision of the trial court which reversed the ZHB's decision upholding the rezoning of the Shaw farm, and which also reversed the Township's grant of Martin's conditional use application.

### ORDER

AND NOW, this 7th day of May, 1996, the orders of the Court of Common Pleas of Washington County in the above-captioned matters are hereby affirmed.