IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Chaffier,             :
                                          :
                   Appellant    :
                                            :
             v.               :  No. 907 C.D. 2022
                                          :  Argued: September 11, 2023
Hellertown Borough Zoning   :
Hearing Board              :
                                          :
             v.               :
                                          :
James O'Brien, Andrea Goshen,  :
John William Goshen, David    :
Heffelfinger, and Alan Kunsman  :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                               FILED: January 10, 2024

          Michael Chaffier (Owner)[1] appeals from the order of the Northampton County Court of Common Pleas (trial court) that affirmed the decision of the Hellertown Borough (Borough) Zoning Hearing Board (Board) granting the substantive validity challenge of James O'Brien, Andrea Goshen, John William Goshen, David Heffelfinger, and Alan Kunsman (together, Objectors) to the

---

[1] The property in question is owned by Michael and Sarah Chaffier, but only Michael Chaffier is participating in this appeal.

Borough's Zoning Ordinance 834-2020 (Ordinance 834) that rezoned Owner's property (Property) from R-1 Residential to R-2 Residential. The issue before the Court is whether the Board erred or abused its discretion when it invalidated Ordinance 834 as illegal spot zoning. After careful review, we affirm.

The relevant facts as found by the Board are as follows. The Property, located at 1527 Easton Road, consists of 6.7 acres, with 4.86 acres in the Borough, and the remaining acres located in Lower Saucon Township. Board Opinion, 8/30/21, at 1.[2] Owner's Property contains two residential dwellings. *Id.* On November 1, 2019, Owner applied for a zoning map amendment with the Borough, requesting that Borough Council, in its legislative capacity, rezone the portion of the Property in the Borough from R-1 Residential to R-2 Residential.[3] *Id.* The Borough Planning Commission reviewed Owner's application and voted 4-3 to recommend that Borough Council deny Owner's request. *Id.* The Lehigh Valley Planning Commission (LVPC) also reviewed the application and opined that the zoning amendment was "generally consistent with the County Comprehensive Plan." *Id.* at 2. *See also* Reproduced Record (R.R.) at 9a-10a. On January 21, 2020, Borough Council reviewed Owner's application, voted 5-1 (with one abstention) to grant Owner's application, and adopted Ordinance 834 to amend the Borough's official

---

[2] The Board Opinion, 8/30/21, may be found in the Original Record (O.R.) at Item No. 15.

[3] Hellertown Borough, PA, Zoning Ordinance of 2002 (Zoning Ordinance), *as amended*, may be found in the Original Record at Item No. 15. Section 450-10(A) of the Zoning Ordinance governs permitted uses in the R-1 zone, which include in relevant part, without limitation, single-family detached dwellings and single-family semi-detached dwellings (duplexes). Section 450-11(A) of the Zoning Ordinance governs permitted uses in the R-2 zone, which include in relevant part, without limitation, multi-family dwellings, single-family attached dwellings (townhomes), single-family detached dwellings, and duplexes. Sections 450-10 and 450-11 of the Zoning Ordinance may be found in the Reproduced Record (R.R.) at 44a-50a.

zoning map to change the designation of Owner's Property from R-1 Residential to R-2 Residential.[4] *Id. See also* R.R. at 20a-21a.

On March 5, 2021, Owner requested a preliminary opinion from the Borough Zoning Officer as to whether single-family attached homes (townhomes) are permitted on the Property in the R-2 zone, to which the Zoning Officer responded that townhomes are permitted. Board Opinion at 3. On April 21, 2021, Objectors, whose various properties are adjacent to or near the Property, filed a zoning appeal with the Board challenging the substantive validity of Ordinance 834, alleging that the rezoning of the Property from R-1 to R-2 constituted illegal spot zoning. *Id.* at 2. The Board conducted three public hearings regarding Objectors' appeal: on May 19, 2021; June 16, 2021; and July 21, 2021, the last of which was for argument only. *Id.* The Board provided proper notice for these public hearings, the first of which was conducted remotely, and the others were conducted in-person with a remote option. *Id.* at 2-3. All five Board members were present (with one member participating remotely) at each public hearing, where they were represented by the Board's solicitor, Matthew Deschler, Esquire. Owner, represented by counsel, was also present at each public hearing, as was the Borough, represented by its solicitor, Michael Corriere, Esquire. *Id.* at 3. Objectors were also present at each public hearing, represented by counsel. *Id.* at 3-4. Objectors' various properties, which range in size from .36 to 2.75 acres, are all located in the R-1 zone. *Id.* R-1 and R-2 zones are the two residential zoning districts in the Borough. *Id.* at 4.

---

[4] After Borough Council adopted Ordinance 834, the Borough Mayor vetoed it, after which Owner filed a declaratory judgment action with the trial court against the Mayor and the Borough, asserting that the Mayor did not have the legal authority to veto Ordinance 834. The trial court found as a matter of law that the Mayor did not have the authority to veto Ordinance 834, and the parties entered into a settlement agreement confirming the valid enactment of Ordinance 834 by Borough Council, effective January 21, 2020. *See* R.R. at 22a-25a.

The Board reviewed Sections 450-10 and 450-11 of the Zoning Ordinance and found that "[m]ore intense residential uses, including, without limitation, single[-]family attached dwellings (townhomes) are not permitted in the R-1 zone." Board Opinion at 4. The Board also made the following findings regarding the R-1 and R-2 zones at issue here.

32. Prior to the zoning amendment [in Ordinance 834], Easton Road served as the boundary line between the R-2 Zone to the West and the R-1 Zone to the east.

33. Prior to the zoning amendment [in Ordinance 834], the R-1 Zone was a single, contiguous zone on the Borough's eastern edge that stretched from the Borough's northeast point where Easton Road intersects with the Lower Saucon Township boundary line to the Borough's southern boundary on Walnut Street.

34. Prior to the zoning amendment [in Ordinance 834], the R-2 Zone was located exclusively on the western side of Easton Road, directly across from the [] [P]roperty.

35. As a result of the zoning amendment [in Ordinance 834], the use of Easton Road as the boundary line between the R-1 and R-2 Zones has been abandoned.

36. As a result of the zoning amendment [in Ordinance 834], the R-2 Zone now juts out and extends to the eastern side of Easton Road for the sole purpose of including the [] [P]roperty in the R-2 Zone.

37. As a result of the zoning amendment [in Ordinance 834], the former single, contiguous R-1 Zone has been severed into two separate R-1 Zones: an isolated, triangle-shaped R-1 Zone in the northeast corner of the Borough that is bordered on the south by the northern property line of the [] [P]roperty, and a large contiguous R-1 Zone bordered on the north by the southern property line of the [] [P]roperty and extending to the Borough's southern boundary on Walnut Street.

4

38. There are no other physical characteristics or conditions associated with the [] [P]roperty that distinguish it from the properties which immediately surround it.

*Id.* at 5-6.[5]

The Board summarized the testimony presented by the parties at the Board hearings. Objectors presented testimony from a professional civil engineer, Mark Bahnick (Bahnick), who prepared sketch plans and testified that it would be possible to fit 18 single-family detached dwellings or 26 duplexes on the Property if it was zoned R-1. Board Opinion at 6. Objectors also presented testimony from a licensed realtor, Joe D'Ambrosio (D'Ambrosio), who testified that single-family detached homes and duplexes, as shown on Bahnick's sketch plans, would be marketable to potential buyers. *Id.* D'Ambrosio also testified that development of the Property with single-family homes or duplexes would increase the Borough's tax base, but that developing the Property with "a townhome development would provide a higher tax ratable than either single-family detached dwellings or twin homes." *Id.* Objectors testified, in essence, that their neighborhood consists of approximately one-acre lots where parents raise their children in "an ideal setting"; they expected the neighborhood to remain single-family homes when they purchased their properties; Ordinance 834 would "change the character of the neighborhood"; they are concerned that development of the Property in the R-2 Zone will cause "loss of privacy, noise, and increased traffic problems"; and, Ordinance 834 does not benefit "the Borough as a whole, but rather solely benefits [Owner]." *Id.* at 7.

---

[5] The Borough zoning maps, before and after the adoption of Ordinance 834, may be found in the Reproduced Record at 42a-43a. The color versions of these maps may be found in the Original Record at Item No. 15.

The Board then reviewed the LVPC Comprehensive Plan, that purports to provide a "10-15[-]year vision of how development and conservation can contribute to the character and services" of the Borough, Lower Saucon Township, and the Saucon Valley School District. Board Opinion at 7. The Board reviewed the map contained in the LVPC Comprehensive Plan,[6] and compared it to the Borough's zoning map before the enactment of Ordinance 834. *Id.* The Board found that "[p]rior to the zoning amendment [Ordinance 834], the R-1 Zone corresponded to the area designated as planned future area of low intensity residential use, and the R-2 Zone corresponded to the area designed as the planned future area of higher intensity residential use." *Id.* The Board found that Objectors' properties and the Property were denoted in yellow [on the LVPC map], signifying the planners' intent to maintain these properties as areas of low intensity residential use. *Id.* at 8.

The Borough presented testimony from its Zoning Officer, Kris Russo (Zoning Officer), which the Board summarized as follows. The Zoning Officer testified that the Property, aside from the two homes already on it, is one of the "few undeveloped properties in the Borough." Board Opinion at 9. The Zoning Officer testified that "streets are used as zoning district boundaries for all but three zoning districts in the Borough." *Id.* The Zoning Officer testified that he believed that Ordinance 834 is "consistent with the surrounding area, which includes townhomes and apartments within the more densely used area on the [western] side of Easton Road." *Id.* The Board noted and described the townhome developments and apartment complexes located in close proximity and directly across the street from the Property. *Id.* at 9-10. The Zoning Officer testified that, since 2015, there had

---

[6] *See* O.R. at Item 15, p. 1-17.

been 5 plan submissions for single-family dwellings, 5 plan submissions for duplexes, and 14 plan submissions for townhomes in the Borough. *Id.* at 10.

The Borough also presented testimony from Bryan Smith, the Borough Engineer (Borough Engineer). The Borough Engineer testified that there are no other properties of the same size as the Property that can be developed for residential purposes in the Borough. Board Opinion at 10. The Borough Engineer opined that "[b]ased on the number of townhome plan submissions received by the Borough in recent years, . . . there is a demand for townhomes in the Borough." *Id.* The Borough Engineer further opined that the uses permitted for the Property in the R-2 Zone, such as townhomes, "would be consistent" with the townhome developments across Easton Road and, therefore, he did not believe that the Property was treated differently than the surrounding properties. *Id.* No Borough residents spoke in favor of Ordinance 834, several Borough residents spoke in opposition to Ordinance 834, and the Board reviewed the exhibits admitted into the record. *Id.* at 11-13. After reviewing the evidence and arguments, on July 21, 2021, the Board voted 3-2 to grant Objectors' substantive validity challenge and to declare Ordinance 834 null and void as unconstitutional spot zoning. R.R. at 546a-47a. The Board directed its solicitor to prepare a written decision in support of its action. *Id.* at 541-42a.

In its written decision, the Board stated that Ordinance 834 is presumed to be valid and constitutional, and Objectors' bear the burden to show that Ordinance 834 is unconstitutional. Board Opinion at 14. The Board noted that there is "no hard and fast test" to determine whether a situation constitutes spot zoning, and each case is decided on its "own peculiarities," citing *Pollock v. Zoning Board of Adjustment*, 342 A.2d 815 (Pa. Cmwlth. 1975). *Id.* The Board reviewed our courts' definition of spot zoning and the "two-prong test to determine whether a zoning

7

ordinance represents spot zoning," namely, "whether differential treatment was afforded the area in question, and if so, whether that differential treatment was justified upon consideration of various factors," citing *Lower Allen Citizens Action Group, Inc. v. Lower Allen Township Zoning Hearing Board*, 500 A.2d 1253, 1260 (Pa. Cmwlth. 1985). *Id.* at 14-15. As to the first prong, the Board considered whether Ordinance 834 reflects a difference in treatment of the Property "from surrounding land similar in character," in terms of topography, location, and characteristics of the Property. *Id.* at 15. The Board concluded that "[t]he record evidence demonstrates that there are no topographical or other physical characteristics of the [] [P]roperty that distinguish it from the surrounding properties. In fact, the [] [P]roperty is essentially indistinguishable from the surrounding properties." *Id.*

The Board also considered whether the Property is suitable for the uses permitted in the R-1 Zone, before Ordinance 834 was enacted, and concluded that it is. Board Opinion at 15-16. The Board credited the testimony of Bahnick, who opined that it would be possible to fit 18 single-family dwellings or 26 duplexes on the Property in the R-1 Zone, and the testimony of D'Ambrosio, who opined that either single-family dwellings or duplexes on the Property would be marketable in the Borough. *Id.* at 16. Therefore, the Board concluded that "while placement of the [] [P]roperty within the R-2 Zone permits the more lucrative development of townhomes, the record evidence demonstrates that the [] [P]roperty is perfectly suitable for development in accordance with its prior R-1 zoning classification." *Id.*

The Board next considered the Borough's argument that the rezoned Property was not afforded differential treatment because Ordinance 834 did not create an "island." Board Opinion at 16. The Borough argued that the Property was

8

not being treated differently than surrounding properties because the Property is located across the street from, and in close proximity to, townhomes and apartments in the R-2 Zone. *Id.* The Board rejected the Borough's argument that spot zoning requires the Property to be an "island" isolated from surrounding properties that are treated differently and determined that a property may be singled out for special treatment if it differs from an abutting property of a different zoning classification, citing *Bidwell v. Zoning Board of Adjustment of Pittsburgh*, 286 A.2d 471 (Pa. Cmwlth. 1972), and *Schubach v. Zoning Board of Adjustment (Philadelphia)*, 270 A.2d 397 (Pa. 1970) (*Schubach I*). *Id.* at 16-17.

The Board then considered the second prong of the spot zoning test, whether the differential treatment of the Property was "justified on health, safety, morals, and public welfare grounds," or whether it was "unjustified or irrational." Board Opinion at 17. The Board considered the Borough's argument that the number of plan submissions since 2015, as testified to by the Zoning Officer, established a "need for properties on which townhomes may be developed," that justified Ordinance 834 as "rationally related to the public interest." *Id.* The Board rejected the Borough's argument, concluding as follows: "However, evidence of the number of plan submissions does not, by itself, necessarily reflect a 'need' for a particular type of development within the Borough. The fact that there were 14 plan submissions for townhomes since 2015 could simply reflect the developers' preference for more lucrative townhome development." *Id.*

The Board also considered the Borough's argument that Ordinance 834 was rationally related to the public interest because it "permits the Borough to raise additional tax revenue to pay for public services without the need for a tax increase." Board Opinion at 18. The Board acknowledged D'Ambrosio's testimony that

9

townhome developments would provide a "higher tax ratable" than single-family dwellings or duplexes. However, the Board rejected the Borough's argument because "the courts 'have consistently held that tax-based concerns cannot be decisive in a zoning case,'" citing *Baker v. Chartiers Township Zoning Hearing Board*, 677 A.2d 1274, 1279 (Pa. Cmwlth. 1996), and other cases. *Id.* The Board rejected the Borough's and Objectors' attempts to rely on arguments made by Attorney Joseph A. Fitzpatrick before the Borough in support of Ordinance 834, because legal argument does not constitute evidence. Board Opinion at 18 n.6. The Board concluded that even if this legal argument constituted evidence, "the state of mind of a legislative body in amending a zoning ordinance is not relevant to determining its validity, and the amendment must stand or fall on its own terms," citing *Plaxton v. Lycoming County Zoning Hearing Board*, 986 A.2d 199, 210 (Pa. Cmwlth. 2009). *Id.* The Board further concluded that, although there was a "good deal of discussion" during the June 16, 2021 Board hearing regarding the effect of townhome development on the Borough's tax revenue, as well as townhome development creating an increased burden on the school district and public services, "there is no competent record evidence that would permit the Board to determine the actual impact of townhomes on the Borough budget." *Id.*

The Board further considered the Borough's argument that Ordinance 834 was rationally related to the public interest because it was consistent with the policy goals of the County Comprehensive Plan as determined by the LVPC. Board Opinion at 19. The Borough asserted that it could have relied on the LVPC letter to support Ordinance 834, to promote "a variety of attainable housing in locations that maximize social and economic opportunities." *Id.* The Board rejected this argument for several reasons. First, the Board found no evidence that the Borough Council

10

actually relied on the LVPC's opinion when it passed Ordinance 834. Further, the Board concluded that the state of mind of Borough Council was not relevant, and Ordinance 834 must stand or fall on its own terms. *Id.* The Board acknowledged that the LVPC letter was admitted into evidence, but it found no evidence in the record to establish the grounds upon which the LVPC's conclusions were based. The Board found no evidence to support the conclusion that townhome developments would maximize social and economic opportunities. *Id.* The Board found no evidence that townhome development on the Property would promote reuse of vacant property, because the Property is not vacant. *Id.* The Board further found that if the Property is "underutilized," it is underutilized by Owner's choice, and not because of any physical characteristics or conditions on the Property. *Id.* at 20. Therefore, the Board concluded that the record does not demonstrate that Ordinance 834 was justified on health, safety, morals, and public welfare grounds, but was, instead, "the product of an 'unjustified or irrational' exercise of legislative power." *Id.*

The Board also evaluated the role of streets separating zoning districts in the Borough, to determine whether Ordinance 834 was a rational exercise of the Borough's legislative authority, or whether it was enacted to benefit Owner. The Board acknowledged the Zoning Officer's testimony that streets are used as zoning district boundaries in the Borough in all but three zoning districts and found that "streets are the predominate means of separating zoning districts within the Borough." Board Opinion at 20. The Board found that Easton Road, "a state route with a double yellow line," served as a "clear and natural boundary between the R-1 and R-2 Zones" before Ordinance 834 was enacted. *Id.* The Board found that, before Ordinance 834, the R-1 Zone was a "single, contiguous zoning district on the

11

eastern side of Easton Road," and that the R-2 Zone, "a less restrictive zoning district than the R-1 Zone," was located "exclusively on the western side of Easton Road." *Id.* The Board found that Ordinance 834 "abandons the use of Easton Road as a clear and natural boundary between the R-1 and R-2 Zones." *Id.* The Board described the new R-2 Zone as jutting out and extending to the eastern side of Easton Road "for the sole purpose of including the [] [P]roperty in the R-2 Zone." *Id.* After Ordinance 834 was enacted, the rezoning of the Property resulted in a severing of the former contiguous R-1 Zone into "two separate R-1 Zones" comprised of an isolated, triangle shaped R-1 Zone in the northeast corner of the Borough, and a large R-1 Zone below the Property. *Id.* The Board then concluded that the result of Ordinance 834 was to sever "the R-1 Zone into two separate and distinct areas" and to abandon "Easton Road as a natural boundary line between zoning districts," which "demonstrates the intent of [Ordinance 834] to benefit [Owner] while disregarding the relationship of zoning restricts to the general health, safety, and welfare of the community." *Id*. at 21. Finally, the Board noted that it did not consider Objectors' argument that Ordinance 834 was invalid because it is inconsistent with the County Comprehensive Plan, because Section 303(c) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. §10303(c),[7] prohibits the invalidation of an ordinance on the basis that it is inconsistent or fails to comply with the provisions of a comprehensive plan. *Id.* at 21 n.8.

Therefore, the Board concluded that Ordinance 834 "reflects differential treatment of the [] [P]roperty from surrounding land similar in character, and a lack of justification for such differential treatment." Board Opinion at 22. The

---

[7] Act of July 1, 1068, P.L. 566, *as amended*, 53 P.S. §§10101-11202.

Board concluded that Ordinance 834 "constitutes spot zoning, and therefore, is unlawful." *Id.*

Owner appealed the Board's decision to the trial court, which heard argument and took no additional evidence. The trial court discerned "no legal error or abuse of discretion" in the Board's decision and affirmed it. Trial Court Opinion, 7/19/22, at 3. [8] Owner then appealed to this Court. [9, 10]

Substantive validity challenges to a zoning ordinance are governed by Section 916.1 of the MPC, 53 P.S. §10916.1. [11] When presented with such a challenge, we must presume the ordinance is "'constitutionally valid unless a challenging party shows that it is unreasonable, arbitrary, or not substantially related to the police power interest that the ordinance purports to serve.'" *Allen Distribution v. West Pennsboro Township Zoning Hearing Board*, 231 A.3d 90, 94 (Pa. Cmwlth. 2020) (internal citations omitted). Generally, "'spot zoning . . . is an arbitrary exercise of police powers that is prohibited by our Constitution.'" *In re Realen*

---

[8] The Trial Court Opinion, 7/19/22, may be found in the Original Record at Item No. 19.

[9] "Because the parties presented no additional evidence after the [Board's] decision, our review is limited to determining whether the [Board] committed an abuse of discretion or an error of law." *Allegheny Tower Associates, LLC v. City of Scranton Zoning Hearing Board*, 152 A.3d 1118, 1121 n.3 (Pa. Cmwlth. 2017). We may find an abuse of discretion only where the Board's findings are not supported by substantial evidence. *Human Services Consultants, Inc. v. Zoning Hearing Board of Butler Township*, 587 A.2d 40, 41 (Pa. Cmwlth. 1991). Given the Board's role as factfinder, the Court may not substitute its judgment for that of the Board and is bound by the Board's determinations of "witness credibility and evidentiary weight." *In re Rural Route Neighbors*, 960 A.2d 856, 860 (Pa. Cmwlth. 2008).

[10] On January 5, 2023, our Court granted the Borough's motion to withdraw as a party to the appeal and excused the Borough from filing a brief.

[11] Added by the Act of December 21, 1988, P.L. 1329.

13

*Valley Forge Greenes Associates*, 838 A.2d 718, 729 (Pa. 2003) (internal citation omitted).

> "Spot zoning is a singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit or detriment of the owner of that lot." "The most determinative factor in analysis of spot zoning is whether the parcel in question is being treated unjustifiably different from similar surrounding land, thus creating an 'island' having no relevant differences from its neighbors." In other words, we must first determine whether the property is being treated differently from the land surrounding it; if so, our inquiry then turns to the issue of whether there exists justification for such differential treatment. "To establish improper spot zoning, the challenger must prove that the provisions at issue are arbitrary and unreasonable and have no relation to the public health, safety, morals and general welfare." "If the validity of a zoning ordinance is debatable, it must be permitted to stand." "Spot zoning cases should be decided on the facts, guided by case law; there is no precise formula for determining whether a rezoning of property constitutes spot zoning."

*Allen Distribution*, 231 A.3d at 95. (internal citations omitted).

Although some of Owner's arguments overlap, as to the first prong of the spot zoning standard, Owner argues that the Board erred or abused its discretion when it concluded that the Property is indistinguishable from the properties surrounding it. Owner argues that the Board erred when it failed to account for the size of the Property, failed to recognize the Property's frontage on Easton Road, and failed to include the properties across Easton Road in the R-2 Zone as part of the area surrounding the Property. Objectors and the Board respond that substantial record evidence exists to support the Board's conclusion that the Property is indistinguishable from the properties surrounding it.

14

Owner argues that the Board abused its discretion by failing to distinguish the Property based on its size. Owner argues that the Property, with 4.86 acres in the Borough, is larger than Objectors' properties, which range from .36 to 2.75 acres. Owner argues that because the Property is larger than Objectors' properties, and similar in size to the properties containing townhomes across Easton Road, the Board should have found the Property to be distinguishable based on its size. Objectors and the Board respond that the Property's size does not distinguish it from the surrounding properties, and that size has not been held to be determinative of whether spot zoning occurred. Objectors and the Board cite *In re Realen*, 838 A.2d at 730, where our Supreme Court determined that reverse spot zoning occurred with respect to a 135-acre golf course. "First, the large size of the tract is not determinative. Zoning unjustifiably discriminatory is beyond the municipality's police power, and '[i]t makes no difference whether it is a ¼ acre lot or a 50[-]acre industrial complex area.'" *Id.* (internal citation omitted). Objectors further respond that the property of Mr. Kunsman, one of the Objectors, is partly situated in the Borough's R-1 District, was originally 18 acres in size, and he was able to subdivide it and develop lots for single-family detached homes. *See* R.R. at 196a-98a.

Owner next argues that the Property is unique from the surrounding properties because it is the only property that has frontage on Easton Road, making it more attractive for a townhome development. Owner argues that our Supreme Court concluded that no spot zoning had occurred regarding a property that was distinguishable from surrounding properties because it fronted on "two heavily traveled traffic arteries." *Schubach v. Silver*, 336 A.2d 328, 336 (Pa. 1975) (*Schubach II*). Objectors and the Board respond that the Board considered the Property's frontage on Easton Road but was unpersuaded that this militated in favor

15

of differential treatment. The Board noted that most spot zoning challenges arise with respect to properties adjacent to a different zoning district, and the fact that the Property borders the townhome development across Easton Road is not a distinguishing characteristic that justifies differential treatment.

Related to the frontage issue, Owner further argues that the Board erred when it found the Property to be indistinguishable from surrounding properties in the R-1 Zone and ignored the townhome developments across Easton Road as part of the surrounding properties. Objectors and the Board respond that the Board did not ignore the fact that the Property bordered the R-2 Zone across Easton Road, but it gave that fact less weight than the natural boundary between the R-1 and R-2 Zones provided by Easton Road. Objectors and the Board reiterate that most spot zoning challenges involve properties adjacent to another zoning district, and our courts have routinely rejected arguments that a property is distinguishable simply because it is adjacent to a different zoning district.

In *Schubach I*, 270 A.2d 397, our Supreme Court considered whether a zoning amendment that rezoned a two-acre parcel from R-4 (residential) to C-2 (commercial) to permit the owner to construct a nursing home was spot zoning. At the time of the rezoning, the property was surrounded by properties zoned residential, and the Court determined that the case presented "a classic case of 'spot zoning'—the entire area was zoned residential, the lot is in the midst of detached dwelling houses that are in the $25,000 price range, and the lot does not differ from its neighbors by either location or topography." *Id.* at 399. The Court also addressed the fact that there was a "very large commercially[]zoned area within a few hundred feet to the north of the premises," but not contiguous with it, and the argument that

16

the area was not "truly residential in nature." *Id.* at 400. The Supreme Court stated as follows:

> We are not persuaded by such an argument since it would mean that every borderline area in the city could be subjected to such down zoning. The extension of this reasoning could lead to one tract after another falling into the C-2 classification: since A is C-2, then B should be C-2; since B is C-2, then C should be C-2; since C, then D; and so on, ad infinitum.

*Id.*

Owner further argues that the Property was not subject to illegal spot zoning because Ordinance 834 created a peninsula of R-2 property, but not an island of R-2 property within the surrounding properties. Owner relies on *Schubach I*, where the Supreme Court stated as follows.

> The record very clearly indicates that City Council has created an 'island' of commercial zoning in the midst of a residential area, that the change in zoning is not required for any reasons particular to the lot in question, and that the general welfare of this community is adversely affected thereby.

*Schubach I*, 270 A.2d at 400. Owner argues that because Ordinance 834 created a peninsula, but not an island, of rezoned property, the Board erred in concluding that the Property was not distinguishable from the townhomes in the R-2 Zone across Easton Road. Objectors and the Board respond that a peninsula, as well as an island, of rezoned property may constitute spot zoning, when the property is treated differently from the surrounding tracts, citing cases including *Knight v. Lynn Township Zoning Hearing Board*, 568 A.2d 1372 (Pa. Cmwlth. 1990), and *Atherton Development Co. v. Township of Ferguson*, 29 A.3d 1197 (Pa. Cmwlth. 2011). The Board further notes that Ordinance 834 not only created a peninsula of the Property,

17

but it created a triangle-shaped island of R-1 property in the northeast portion of the R-1 Zone that is now unconnected to the rest of the R-1 Zone.

In *Knight*, 568 A.2d at 1373, our Court considered whether rezoning a 10.067-acre property from Agricultural to Rural Center constituted illegal spot zoning. The record showed that the property in question, after rezoning, was "a peninsula zoned Rural Center jutting from the existing Rural Center zone into the Agricultural zone." *Id.* at 1375. Relevant here, the Court held that "[a]lthough an amendment which creates a peninsula does not necessarily constitute spot zoning . . . we conclude that the action here did constitute spot zoning." *Id.* at 1376. In *Atherton*, 29 A.3d at 1202, the Court considered the validity of a zoning ordinance that zoned a portion of the owner's property Townhouse Residential-R-3, when another portion of his property, as well as properties surrounding his property on three sides, were zoned General Commercial-C. The owner sought to have the residential portion of his property rezoned for commercial use, arguing that the zoning ordinance constituted illegal reverse spot zoning. *Id.* at 1199. Although the Court concluded that the zoning ordinance did not constitute reverse spot zoning, relevant here, the Court agreed with the trial court's observation that "'[w]hile Pennsylvania case law clearly demonstrates that a peninsula, in addition to an island, may constitute spot zoning in the appropriate case [*see Knight*; *C.L. Associates v. Board of Supervisors of Montgomery Township*, 415 A.2d 134 (Pa. Cmwlth. 1980)], the law is silent as to whether or not a peninsula may form the basis for a claim of reverse spot zoning.'" *Atherton*, 29 A.3d at 1209. *See also C.L. Associates*, 415 A.2d at 136, where the Court held that a zoning amendment constituted classic illegal spot zoning when the rezoning drew "an indentation in the line separating the C-

Commercial and R-2-Residential zoning districts tailored to the [owner's] property as a peninsula of residentially zoned land in a sea of commercial zoning."

As to the second prong of the spot zoning standard, Owner argues that the Board erred in concluding that Ordinance 834 was unreasonable and had no relation to the public health, safety, morals, and general welfare of the community. Owner argues that the Board erred when it ignored the need for townhomes in the Borough, failed to acknowledge Ordinance 834 as establishing a transition zone between the R-1 and R-2 zoning districts, ignored the LVPC determination that Ordinance 834 was consistent with the County Comprehensive Plan, and failed to acknowledge that increased tax revenue from townhomes would benefit the entire community. Objectors and the Board respond that the Board committed no error when it concluded that Ordinance 834 was unreasonable and operated to benefit Owner, not the general welfare of the Borough.

Owner first argues that Ordinance 834 was rationally related to the health, safety, and welfare of the Borough because it allowed the Borough to meet the need for townhomes. Owner argues that the Board erred when it failed to recognize the need for townhomes as testified to by the Zoning Officer and Borough Engineer. Owner argues that the Board abused its discretion by substituting its judgment for that of the Borough Council, which enacted Ordinance 834 to address the need for townhomes. Objectors and the Board respond that Owner is attempting to attribute the need for townhomes to the Borough as the reason to enact Ordinance 834 when there was no evidence that Borough Council considered this need when it rezoned the Property. Objectors note that, if the Borough recognized the need for townhomes, it would have considered rezoning more properties in the R-1 Zone to accommodate this need, rather than only rezoning the Property at Owner's request.

19

Owner next argues that Ordinance 834 was rationally related to the health, safety, and welfare of the Borough by establishing a transition zone between the R-1 and R-2 Zones as they existed before the rezoning. Owner argues that transition zoning has long been recognized as a legitimate exercise of municipal zoning authority, citing in support *Schubach II*, 336 A.2d 328, and *Appeal of McWilliams*, 198 A.2d 538 (Pa. 1964). Objectors and the Board respond that the cases cited by Owner are inapposite here, and that just because the Property borders the R-2 Zone does not justify rezoning it for transition purposes, citing *Schubach I*.

Some years after the Court's decision in *Schubach I*, where it held that spot zoning had occurred with respect to the proposed nursing home project, the Court again considered whether spot zoning occurred with respect to the same project in *Schubach II*, 336 A.2d 328. Since the earlier decision in *Schubach I*, the property owner had acquired several additional parcels contiguous to the original site of the nursing home project, now comprising land making up "approximately one-half of a city block," which was now surrounded by numerous commercial properties, except for one side that retained residential properties. *Schubach II*, 336 A.2d at 332. Under these changed circumstances, the Court found that the character of the neighborhood had changed, and that it was now more commercial in nature. *Id.* at 334. The Court held that, with the increase in size of the property and the changed character of the properties surrounding the property, the zoning amendment did not constitute spot zoning, but was rather a "natural extension of a previously existing commercial use." *Id.* at 337. The Court clarified, however, that

> [t]his "transition zone" theory, as recognized in [*Cleaver v. Board of Adjustment of Tredyffrin Township*, 200 A.2d 408 (Pa. 1964),] in no way erodes the rejection of the argument in [*Schubach I*,] that because this land was on the border line between the two uses it should be rezoned.

20

> We in no way retreat from the view that simply because a piece of property rests on the border of a commercial zone it automatically can be rezoned commercial.

*Schubach II*, 336 A.2d at 338. *See also Appeal of McWilliams*, 198 A.2d 538, in which the Court found no illegal spot zoning occurred when a property was reclassified from business to residential use, when the rezoned area was bordered on two sides by a large residential district and did not create a residential island in an otherwise commercial district.

Owner next argues that Ordinance 834 was rationally related to the health, safety, and welfare of the Borough because it was consistent with the County Comprehensive Plan, as recommended by the LVPC. Owner does not argue that the Board was required to find Ordinance 834 valid because it was consistent with the LVPC recommendation, but that Borough Council could have relied upon the LVPC recommendation when it enacted Ordinance 834, thus providing a rational reason for rezoning the Property. Owner's argument here echoes the argument made by the Borough before the Board, which the Board rejected. Here, Objectors and the Board respond that although the LVPC recommendation was made part of the record, the Board was neither obligated nor persuaded to accept the LVPC's conclusion. Objectors and the Board reiterate that the record contains no evidence that Borough Council considered the LVPC recommendation when it passed Ordinance 834, Borough Council's state of mind when passing legislation is irrelevant, and the text of Ordinance 834 must stand on its own. *See Plaxton*, 986 A.2d at 210.

Owner next argues that Ordinance 834 was rationally related to the health, safety, and welfare of the Borough because townhome development on the Property would generate increased tax revenue to benefit the entire Borough. Owner argues that the Board erred when it found that there was no competent evidence in the record to determine the actual impact of townhomes on the Borough budget.

21

Objectors and the Borough reject this argument based on the lack of evidence in the record to demonstrate the specific revenues or tax burdens generated by townhome development. Objectors and the Borough again cite *Baker*, 677 A.2d at 1279, and *Putney v. Abington Township*, 108 A.2d 134, 137 (Pa. Super. 1954), for the proposition that a zoning ordinance cannot be justified solely because it will produce more tax revenue.[12]

Based on the foregoing, we affirm the trial court and hold that Ordinance 834 is invalid as illegal spot zoning. As to the first prong of the spot zoning analysis, whether the Board erred or abused its discretion when it found that the Property was not distinguishable from the surrounding properties, we may not substitute our judgment for that of the Board, so long as substantial evidence in the record supports the Board's findings. *Human Services Consultants, Inc.*, 587 A.2d at 41, and *In re Rural Route Neighbors*, 960 A.2d at 860. Further, we must analyze the particular facts of this case, guided by case law, to determine whether Ordinance 834 constitutes spot zoning, because "no precise formula" exists to determine whether rezoning of a property constitutes spot zoning. *Allen Distribution*, 231 A.3d at 95 (quoting *Takacs v. Indian Lake Borough Zoning Hearing Board*, 11 A.3d 587, 594 (Pa. Cmwlth. 2010)).

The size of the Property does not distinguish it from neighboring properties in the R-1 Zone. The Property is not so large that it cannot be subject to illegal spot zoning. *In re Realen*, 838 A.2d at 730. The Property is not distinguishable because it fronts on Easton Road, making it more attractive for

---

[12] Owner also argues that Ordinance 834 is rationally related to the Borough's health, safety, and welfare because it met some of the stated objectives of the Zoning Ordinance, as stated in Section 450-3 of the Zoning Ordinance. Because this argument relies on Owner's contentions that Ordinance 834 met a need for the development of townhomes in the Borough, which has already been addressed, we will not separately address it again.

townhome developments. Although a property may be distinguishable because it fronts on "two heavily traveled traffic arteries," *Schubach II*, 336 A.2d at 336, this conclusion is not mandated, and any conclusion must consider the specific circumstances of the Property. We discern no abuse of discretion in the Board's decision to give less weight to the Property's frontage on Easton Road, when the record contains substantial evidence that Easton Road served as a boundary between the R-1 and R-2 Zones. We reject Owner's argument that because the Property is adjacent to the R-2 Zone across Easton Road, that the townhome developments in the R-2 Zone must be considered part of the properties surrounding the Property, and that the Board erred in not making such a finding. Rezoning requests often involve a property that is located in one zoning district and is adjacent to a different zoning district. Our Supreme Court has rejected the argument that because a property borders another zoning district, that we must conclude the property is indistinguishable from those in the adjacent district. *Schubach I*, 270 A.2d at 400. Relatedly, we discern no error in the Board's finding that the Property is not distinguishable from the surrounding properties, when Ordinance 834 created a peninsula, but not an island, of rezoned property. A peninsula of rezoned property may constitute spot zoning, depending on the specific circumstances of the property and its surroundings. *C.L. Associates*, 415 A.2d at 136; *Knight*, 568 A.2d at 1376; *Atherton*, 29 A.3d at 1209.

As to the second prong of spot zoning analysis, we discern no error in the Board's conclusion that Ordinance 834 was not rationally related to the health, safety, and welfare of the Borough, but was enacted to benefit Owner. Although the Zoning Officer testified that the Borough received more townhome submissions since 2015 than submissions for single-family dwellings or duplexes, the Board

23

found that "the number of plan submissions" did not, by itself, demonstrate a "need" for townhomes, but could "simply reflect the developer's preference for more lucrative townhome development." Board Opinion at 17. The Board did not err when it considered the evidence but weighed it differently than Owner advocates. Therefore, we discern no error in the Board's failure to conclude that Ordinance 834 was justified to create a transition zone between the R-1 and R-2 Zones. Case law recognizes that establishing a transition zone between different zoning districts may relate to the health, safety, and welfare of the community, but does not require this result. *Schubach I*, 270 A.2d at 400. We further discern no error in the Board's giving less than Owner advocates regarding the LVPC recommendation that Ordinance 834 was consistent with the County Comprehensive Plan. The record contains no evidence that Borough Council considered the LVPC recommendation when it passed Ordinance 834, and even if it did, Borough Council's state of mind when passing legislation is irrelevant, and the text of Ordinance 834 must stand on its own. *Plaxton*, 986 A.2d at 210. Further, we note that the LVPC recommendation in favor of Ordinance 834 was in conflict with the Borough Planning Commission recommendation against Ordinance 834. We are bound by the Board's determination of witness credibility and evidentiary weight. *In re Rural Route Neighbors*, 960 A.2d at 860. Finally, we conclude that the Board did not abuse its discretion when it found that the impact of townhome development on the Borough's budget was too speculative to make a specific finding. It is well established that a zoning ordinance may not be justified as rationally related to the general health,

24

safety, and welfare of the community, simply because it will raise revenue for the municipality. *Putney*, 108 A.2d at 137,[13] and *Baker*, 677 A.2d at 1279.

The Borough maps, before and after Ordinance 834, demonstrate a classic example of spot zoning as applied to the Property. The Board made findings based on substantial evidence in the record, supported by case law applied to the particulars of the Property and the properties surrounding it. As a result, the Board did not err or abuse its discretion in holding that Ordinance 834 constitutes impermissible spot zoning of the Property.

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

[13] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Chaffier,                          :
                                           :
                    Appellant              :
                                           :
          v.                               : No. 907 C.D. 2022
                                           :
Hellertown Borough Zoning                  :
Hearing Board                              :
                                           :
          v.                               :
                                           :
James O'Brien, Andrea Goshen,              :
John William Goshen, David                 :
Heffelfinger, and Alan Kunsman             :


O R D E R


          AND NOW, this 10th day of January, 2024, the Order of the Court of

Common Pleas of Northampton County dated July 19, 2022, is AFFIRMED.


                              _____
                              MICHAEL H. WOJCIK, Judge