## Schubach et ux., Appellants, *v.* Zoning Board of Adjustment.

250

Argued January 14, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

re-argument refused November 16, 1970.

*J. Leon Rabben,* for appellants.

*John B. Day,* Assistant City Solicitor, with him *Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for Zoning Board of Adjustment, appellee.

*Irvin Stander,* for intervening appellee.

Opinion by Mr. Justice Jones, October 9, 1970:

Pine Hill Home, Inc., owns a two-acre lot in northeast Philadelphia and would like to build thereon a nursing home for physically and mentally retarded persons. Until April of 1968, the lot was zoned R-4 Residential. All the land contiguous to the premises in question is classified R-4 under the Philadelphia Zoning Code, and the land across the street is rated R-3. A nursing home may be erected in an R-4 area, provided that the Zoning Board of Adjustment issues a special certificate therefor. *The Philadelphia Code,* Zoning and Planning §§14-203(2)(f) and (h).

In 1966, the two-acre lot then being zoned R-4, Pine Hill filed its application with the Zoning Board for a special certificate to permit the construction of the same nursing home which is presently in question. *See generally, Lower Merion Twp. v. Enokay, Inc.,* 427 Pa. 128, 233 A. 2d 883 (1967). The application was refused, and, on appeal to the Court of Common Pleas of Philadelphia, the Board's decision was affirmed.

In 1967, Pine Hill attempted to have the property rezoned by City Council from R-4 to C-2, which is a commercial classification under which the nursing home could be built without an application for a special certificate. However, City Council refused to pass the rezoning measure.

In early 1968, Pine Hill again attempted to have the property rezoned and succeeded in having its bill introduced into City Council. At a public hearing, held on February 20, 1968, the representatives of Pine Hill presented their testimony in support of the rezoning ordinance. At the outset of the hearing and at the insistence of Paul D'Ortona, President of City Council, Pine Hill's attorney stated that his client would agree to execute a covenant restricting the property to use as a nursing home for mentally or physically retarded

children, to the exclusion of all other possible C-2 commercial uses.

Twenty-two opponents of the proposed rezoning appeared before the Council, either individually or as representatives for other similarly concerned neighbors, and expressed their vigorous opposition to the rezoning measure. An affidavit was also presented to City Council which stated the opposition of one hundred and fifty-five families who live in private homes within a two-block radius of the lot in question. Some of the objections voiced at the meeting were as follows: traffic flow would be sharply increased; fire protection would be inadequate (at night, the 162 retarded children, most of them nonambulatory, would be cared for by only ten nursing home personnel); the lot is too small to provide any play area for the children; the proposed home would physically detract from the neighborhood, thus lowering property values; rezoning this one lot would begin a course of action of downgrading the entire area; and the public transportation facilities are inadequate.[1] Testimony was also produced that, since 1952, the property had been sold numerous times at a "commercial price," and fourteen prior unsuccessful applications had been made to the Department of Licensees and Inspection requesting a permit to allow a commercial use of the lot.

On May 6, 1968, Pine Hill recorded a duly executed set of restrictive covenants which, as requested by Council President D'Ortona, provided that the land would be used only for a "nursing home for mentally and physically retarded persons."[2] However, the docu-

---

[1] Buses normally run once every forty minutes, but there are none at all after 9:30 p.m. during the week or at any time on Sunday.

[2] No challenge has been made to the validity of this covenant and we express no opinion thereon, but merely note its existence.

ment also stipulated that the covenants contained therein would be effective for only twenty years. Thus, whoever owns this two-acre lot in 1988 could tear down the nursing home and erect, in the midst of this residential area, *inter alia*: a store for selling motorcycles, boats or farm equipment; an athletic and drill hall; a bowling alley; a pool hall; a funeral parlor; an electrical, water or gas substation; a chemical research laboratory; or a prison. *The Philadelphia Code,* Zoning and Planning §14-303(2).

City Council passed the ordinance on April 3, 1968, and the lot was rezoned as C-2. A group of residents, including the present appellants, then appealed to the Zoning Board of Adjustment from the action of the Department of Licenses and Inspection in amending the Philadelphia zoning map to conform to the new ordinance. On July 16, 1968, after hearing further testimony, the Zoning Board dismissed the appeal by a vote of four to two.

An appeal was immediately filed in the Court of Common Pleas of Philadelphia County. On February 26, 1969, the lower court sustained the action of the Zoning Board and the instant appeal followed. The appellants claim that the ordinance constitutes "spot zoning," is not in accord with a comprehensive plan, and bears no substantial relationship to the public health, safety or welfare.

It is well-settled that "an ordinance cannot create an 'island' of more or less restricted use within a district zoned for a different use or uses, where there are no differentiating relevant factors between the 'island' and the district . . . . Thus, singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment, is invalid 'spot'

zoning." 8 McQuillin, *Municipal Corporations,* §25.83, at 224-25 (3d ed. 1965). *Accord, e.g., Mulac Appeal,* 418 Pa. 207, 210 A. 2d 275 (1965).

The case at bar presents a classic instance of "spot zoning"—the entire area was zoned residential, the lot is in the midst of detached dwelling houses that are in the $25,000 price range, and the lot does not differ from its neighbors by either location or topography. *See Schmidt v. Philadelphia Zoning Bd. of Adjust.,* 382 Pa. 521, 114 A. 2d 902 (1955). In the absence of evidence of either a necessity for the rezoning or of relevant differentiating facts between the "island" and the land immediately adjacent thereto, this rezoning was illegal. *Glorioso Appeal,* 413 Pa. 194, 196 A. 2d 668 (1964).

The evidence offered in support of the ordinance established the need, *in general,* for such nursing homes in Philadelphia. However, the record reveals no reason to believe that the home could not be built in a properly zoned area and, most importantly, there is no evidence that the nursing home would fulfill any needs of this *particular* community. *Salvitti v. Zoning Bd. of Adjust.,* 429 Pa. 330, 240 A. 2d 534 (1968). The appellees also place substantial emphasis upon the fact that there is a very large commercially-zoned area within a few hundred feet to the north of the premises in question. It is argued that this *per se* indicates that the area is not truly residential in nature and, therefore, that the Pine Hill lot should also be commercially zoned. We are not persuaded by such an argument since it would mean that every borderline area in the city could be subjected to such downzoning. The extension of this reasoning could lead to one tract after another falling into the C-2 classification: since A is C-2, then B should be C-2; since B is C-2, then C should be C-2; since C, then D; and so on, ad infinitum.

The record very clearly indicates that City Council has created an "island" of commercial zoning in the midst of a residential area, that the change in zoning is not required for any reasons peculiar to the lot in question, and that the general welfare of this community is adversely affected thereby. The court below committed an error of law in failing to overturn the ordinance as illegal spot zoning.

Order reversed.

Mr. Justice EAGEN dissents.