# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael DiMattio, Eileen Tighe,   :
Drew Carlin and Nadia Carlin,   :
              Appellants   :
  :
         v.   :   No. 1051 C.D. 2015
  :   Submitted: March 4, 2016
Millcreek Township Zoning Hearing   :
Board and Township of Millcreek   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY JUDGE BROBSON**            **FILED: September 21, 2016**


This matter relates to a decision by the Millcreek Township Board of Supervisors (Supervisors) to pass Ordinance 2014-7, which "down-zoned" a 24-acre parcel of land (Property) within Millcreek Township (Township) from a mix of RR (Rural Residential) and R-1 (Single Family Residential) to R-2 (Low Density Residential). In terms of residential dwellings, only single-family residents are allowed in the RR and R-1 districts. Agricultural activities are an authorized use in an RR district, distinguishing it from the R-1 district. The down-zoning of the Property to R-2 allows for two-family dwellings (*i.e.*, duplexes or townhouses) as an additional permitted residential use on the Property and eliminates agricultural use on the portion of the Property zoned RR.[1]

---

[1] "The R-2 Low Density Residential District is intended to allow any uses permitted by the previous residential districts as well as two family dwellings such as duplexes or townhouses." Section 4.02.1 of the Millcreek Township Zoning Ordinance (Reproduced Record (R.R.) at 13a.)

Appellants Michael DiMattio, Eileen Tighe, Drew Carlin, and Nadia Carlin (Objectors) are nearby, but not adjoining, property owners whose properties share the only point of access/egress to the disputed parcel.[2] Objectors initiated the subject substantive validity challenge to Ordinance 2014-7. The Millcreek Township Zoning Hearing Board (ZHB) denied Objectors' challenge, and the Court of Common Pleas of Erie County (trial court) affirmed. We now affirm the trial court's decision.

## I. BACKGROUND

On March 17, 2014, the owners of the Property, Jeffrey L. Braver and Marvin E. Gold (Owners), submitted an application to the Township's Planning Commission (Commission), requesting that the Township's zoning map be amended to reclassify the property as R-2. On April 8, 2014, the Commission recommended that the Supervisors deny Owners' application to amend the zoning map. The Supervisors considered Owners' application during their May 13, 2014 regular meeting and approved the application by unanimous vote. (Reproduced Record (R.R.) at 43a.) On June 3, 2014, the Supervisors adopted Ordinance 2014-7, which amended the Zoning Ordinance, in the nature of a map change, to reflect the rezoning of the Property from RR and R-1 to R-2. (R.R. 6a.)

Objectors lodged their challenge to the substantive validity of Ordinance 2014-7 with the ZHB. Objectors raised three claims: (1) that the rezoning constituted unlawful "spot zoning"; (2) that the rezoning was inconsistent with the Township's comprehensive plan; and (3) that the rezoning was an invalid

---

[2] The Property is located on Golf Course Road, which is a private road and an extension of the public road that passes by Objectors' homes on Old Zink Road.

exercise of the Township's police power because it bears no relationship to the public health, safety, or welfare. The ZHB held a hearing on the challenge on August 27, 2014, during which it received evidence. The ZHB issued its final adjudication on September 25, 2014 rendering the following findings of fact:

1. [Objectors] have filed a challenge to the validity of Ordinance 2014-7, enacted by the Township Board of Supervisors on June 3, 2014. The Ordinance rezoned property located on the south side of Golf Club Road, west of Interstate 79 and consisting of approximately 24 acres. Prior to the rezoning, a portion of the subject property was zoned RR Rural Residential and R-1 Residential. Following the rezoning the land was classified R-2 Low Density Residential. The chief difference between the subject property's original zoning classifications and the R-2 designation is that R-2 permits two family dwellings, commonly known as duplexes, as well as single family dwellings.

2. [Objectors] are residents of the general area of the subject property, but live approximately six-tenths of a mile and three quarters of a mile from the subject property, respectively.

3. The subject property is located at the extreme southern end of Millcreek Township and a portion of the property actually abuts neighboring Summit Township. The property also abuts Interstate 79 and is located very close to a municipal golf course. Access to the municipal golf course is via Golf Club Road, the street fronting the subject property.

4. The Township's comprehensive plan indicates that long range planning contemplated some sort of conservation or recreational use on the subject property, although even its current zoning classification permits single family residential development. In fact, the Millcreek Township Zoning Ordinance does not contain a zoning classification for conservation or public recreation as such.

5. The owners of the subject property originally petitioned the Board of Supervisors for a

3

reclassification of the property to R-4 High Density Residential, but this request was withdrawn and replaced with the request for the R-2 designation, which was ultimately approved by the Supervisors. The Township Planning Commission, by a three to two vote, failed to recommend approval of the proposed R-2 zoning, as did the Erie County Planning Commission. Nonetheless, the Supervisors, by a unanimous 3-0 vote, approved the rezoning.

6. No strictly procedural issues regarding the method of enactment of the Ordinance have been raised by [Objectors], whose appeal documents indicate that this validity challenge is based upon a claim that the rezoning constitutes invalid "spot zoning;" that it is inconsistent with the Township's comprehensive plan; and that it generally bears no relationship to the advancement of the public health, safety and welfare.

7. The subject property is a relatively large parcel of 24 acres consisting of a significant amount of wetland and undeveloped area. It is currently vacant.

(R.R. 76a-77a.)

The ZHB rejected each of Objectors' claims. As to "spot zoning," the ZHB first noted the large size of the Property and concluded that while the size of the subject parcel is not necessarily determinative, courts have typically found "spot zoning" with respect to small parcels. The ZHB also noted that there are many zoning districts within the Township that comprise "far less than 24 acres in area." (R.R. 77a.) "Under [Objectors'] view," the ZHB continued, "all of them would be invalid as 'spot zoning.'" (*Id.*) The ZHB also held that the Property did not constitute an "island" surrounded by disparate land uses, something the ZHB observed was also indicative of "spot zoning." Moreover, in the ZHB's assessment, both R-1 and R-2 districts provide for low-density residential development, the latter of which allows for townhouses and duplexes. The ZHB concluded that rezoning the Property to R-2 to allow for this additional form of

4

low-density residential development did not create fundamentally inconsistent uses among the Property and neighboring districts such that locating them in proximity to each other reflected bad planning. (*Id.*)

The ZHB also rejected Objectors' claim of a violation of the Township's comprehensive plan, noting critically that the plan's suggested use of the Property was inconsistent even with its permitted use *before* passage of Ordinance 2014-7. The ZHB held that inconsistency with a planning document, which is at best a recommendation to a legislative body, is not adequate legal grounds to override a legislative act of rezoning land. (*Id.*)

Finally, the ZHB addressed Objectors' police power challenge. The ZHB held that in order to withstand this challenge, the Supervisors' rezoning decision need only be rational. The ZHB concluded that Ordinance 2014-7 met the test of rationality, rejecting Objectors' evidence and concerns about traffic impacts and aesthetic and safety issues as inadequate to overcome the presumption of validity. Instead, such concerns are appropriately raised and addressed if and when the property is developed. The ZHB rejected as irrelevant Objectors' argument that other properties within the Township are better suited for multi-family development. The ZHB also rejected Objectors' plea that the Property should be used as "green space," noting that it is privately-held and that absent the exercise of eminent domain the Township cannot mandate that it remain vacant. (R.R. 77a-78a.)

Objectors' appealed the ZHB's decision to the trial court, which did not take any additional evidence. Objectors' pressed their claims. The trial court affirmed, agreeing with the ZHB that, in light of the characteristics of the Property and the surrounding area, the differentiation in zoning classification between the

5

original R-1 zoning district and the change to R-2 was not so significant as to exceed the Supervisors' power to enact a zoning change. (R.R. 83a-87a.) In so doing, the trial court specifically analyzed and addressed Objectors' concerns about the difference in the density of residential development afforded in the R-2 zone. Nonetheless, the trial court rejected those concerns, noting that at best only half of the Property is even developable due to wetlands. Infrastructure and topographical limitations on the Property will also impede full development of the Property. (R.R. 84a.) In the trial court's assessment, then, Objectors did not establish that Ordinance 2014-7 constituted spot zoning. Based upon that conclusion, the trial court opined that it need not address the question of whether the rezoning amendment served the public health, safety, and welfare.

With regard to Objectors' claims that the rezoning was inconsistent with the Township's comprehensive plan, the trial court essentially adopted the ZHB's analysis, adding, however, that "[a] zoning ordinance cannot be challenged or invalidated on the basis it is inconsistent with a comprehensive plan." (R.R. at 89a (citing Section 303(c) of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10303(c)).)

On appeal to this Court, Objectors jettison their challenge to Ordinance 2014-7 based on an alleged inconsistency with the Township's comprehensive plan. They press, however, their claims that Ordinance 2014-7 constitutes illegal spot zoning and that the Supervisors failed to consider how the rezoning would negatively impact the general health, safety, and welfare of the surrounding community. In an appeal from a court of common pleas' order affirming a decision of a zoning hearing board, where the common pleas court takes no additional evidence, our review is limited to considering

6

whether the zoning hearing board abused its discretion or erred as a matter of law. *Interstate Outdoor Adver. v. Zoning Hearing Bd. of Warrington Twp.*, 39 A.3d 1019, 1024 n.5 (Pa. Cmwlth. 2012), *appeal denied,* 75 A.3d 1283 (Pa. 2013). The zoning hearing board abuses its discretion when it issues findings of fact that are not supported by substantial record evidence:

> Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Zoning Hearing Board as fact finder is the ultimate judge of credibility and resolves all conflicts in the evidence. If the Zoning Hearing Board's findings of fact are based upon substantial evidence, those findings of fact are binding upon this Court for purposes of appellate review.

*Eichlin v. Zoning Hearing Bd. of New Hope Borough*, 671 A.2d 1173, 1175 (Pa. Cmwlth. 1996).

## II.   SPOT ZONING

### A.  Legal Standard

Spot zoning is unconstitutional and invalid. *Lower Allen Citizens Action Group, Inc. v. Lower Allen Twp. Zoning Hearing Bd.*, 500 A.2d 1253, 1260 (Pa. Cmwlth. 1985). All zoning ordinances, however, are presumed constitutional and valid. *Atherton Develop. Co. v. Twp. of Ferguson*, 29 A.3d 1197, 1204 (Pa. Cmwlth. 2011). The burden thus falls on the challenger to prove otherwise. *Id.* In *Takacs v. Indian Lake Borough Zoning Hearing Board*, 11 A.3d 587 (Pa. Cmwlth. 2010), we explained spot zoning and the relevant legal standard:

> Spot zoning is a singling out of one lot or a small area for *different treatment from that accorded to similar surrounding land indistinguishable from it in character*, for the economic benefit or detriment of the owner of that lot. *The most determinative factor in an analysis of spot zoning is whether the parcel in question is being treated unjustifiably different from similar surrounding land,*

7

*thus creating an "island" having no relevant differences from its neighbors.*

> To establish improper spot zoning, the challenger must prove that the provisions at issue are arbitrary and unreasonable and have no relation to the public health, safety, morals and general welfare. If the validity of a zoning ordinance is debatable, it must be permitted to stand. Spot zoning cases should be decided on the facts, guided by case law; there is no precise formula for determining whether a rezoning of property constitutes spot zoning.

*Takacs*, 11 A.3d at 594 (citations omitted; emphasis added); *see also Sharp v. Zoning Hearing Bd. of Twp. of Radnor*, 628 A.2d 1223, 1228 (Pa. Cmwlth.) (holding there is no precise formula to determine spot zoning; whether classification constitutes spot zoning is determined by facts and guided by case law), *appeal denied*, 637 A.2d 290 (Pa. 1993).

As suggested by the quotation above, a challenger's initial burden in a spot zoning case is to demonstrate that a governing body's rezoning reflects a difference in treatment of a tract of land from surrounding land similar in character. Consequently, while Objectors here make additional claims relating to the public health, safety, morals, and general welfare, an analysis addressing that component of their spot zoning claim is only necessary if Objectors satisfied the burden to prove a difference in treatment of characteristically similar surrounding land.

## B. Analysis

We look to the Board's decision and the record to see whether Objectors satisfied their burden of demonstrating that the Property is indistinguishable in character from the land immediately surrounding it. *Schubach v. Zoning Bd. of Adjustment*, 270 A.2d 397, 399 (Pa. 1970). *Schubach* provides an illustration of the analysis that courts employ in considering whether an objector

8

has demonstrated sufficient similarities between a re-zoned tract and surrounding areas. In *Schubach*, the Supreme Court considered whether an ordinance rezoning a four-acre parcel of land from an R-4 to C-2 zoning classification, in order for the owner to construct a nursing home without having to obtain a special certificate, constituted spot zoning. The tract was approximately one-half of a city block and was surrounded by (1) a 450-acre plot zoned industrial to the north; (2) a commercial area upon which a gas station and stores were located to the east; (3) a medical center, apartment buildings, and a shopping center to the south and southeast; (4) exclusively residential properties to the west; and (5) an apartment structure to the northwest. *Id.* at 332. The Supreme Court opined:

> It is well-settled that an 'ordinance cannot create an "island" of more or less restricted use within a district zoned for a different use or uses, where there are no differentiating relevant factors between the "island" and the district . . . . Thus, singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefits of the owner of that lot . . . is invalid "spot" zoning.'

*Schubach*, 336 A.2d at 336 (citation omitted).

The Supreme Court observed that the subject property was "distinctly different from the surrounding residential land." *Id.* at 336. As described by the Supreme Court, the subject property fronted two heavily traveled traffic arteries, which distinguished it from the surrounding land. The record also showed that development of the property in accordance with the existing detached residential zoning was not suited to the permitted residential use in the zone in which it was located or economically feasible. *Id.* The Supreme Court opined that the commercial fronting of the property together with the poor economic and location fit relative to detached residential uses, rendered the property "useable only as a

'natural extension' of the already existing commercial use." *Id*. at 384. Thus, the Supreme Court concluded that the rezoning did not unjustifiably create an island amidst different surrounding uses. *Id*. at 385. Additionally, the Supreme Court noted that reviewing courts should not

> take too constrained a view of the surrounding neighborhood . . . . Although the court must focus its attention on the immediately surrounding land, and instantly the residential land to the west, since the owners thereof have a distinct right to the protection of their property interests, we are mindful that in this immediate area there is an industrial tract, multi-family apartment structures and shopping areas.

*Id*. More recently, in *In re Realen Valley Forge Greens Association*, 838 A.2d 718 (Pa. 2003), our Supreme Court described the question as "whether the lands at issue are a single, integrated unit and whether any difference in their zoning from that of adjoining properties can be justified with reference to the characteristics of the tract and its environs." *Realen*, 838 A.2d at 730.

During the Board's hearing, one of the Objectors, Mr. DiMattio, pressed upon the Board the concern that the development of the Property would create a detriment to the individual residents whose properties are situated on Old Zuck Road. Mr. DiMattio also indicated that all of the residences on Old Zuck Road are single family homes. Mr. DiMattio represented to the Board that there are numerous other areas in the Township that are designated as R-2 zoning districts, thus suggesting that there are other areas in which the owner of the Property could build such residences. Mr. DiMattio also submitted evidence concerning the need for "green uses" in the Township, and that the Property is designated for such use by the Township's comprehensive plan. Although evidence in the record indicates that areas to the west and north of the Property,

10

like the Property prior to the rezoning, are zoned as RR or R-1, the simple fact that the Property was zoned similarly to the adjacent areas is insufficient to establish that the rezoning constituted differing treatment of characteristically similar surrounding land.

Although Objectors do not identify and address any alleged similar characteristics between the Property and the surrounding land, we have reviewed the evidence of record to consider whether Objectors met their burden to prove that the Property is characteristically similar to adjoining areas, such that the Board was required to offer justification for the differential treatment of the Property. First, we note that the record indicates that the area generally to the east of the Property abuts Interstate 79. Our Supreme Court has accepted that arterial roadways may constitute "an appropriate feature to be designated as the boundary between incompatible zoning districts." *Realen*, 838 A.2d at 730. Thus, it would be for the Board to consider that characteristic when determining whether the area adjoining the Property to the east provides a basis for comparison of similar characteristics with the Property. Moreover, even if the nature of the area on the other side of Interstate 79 were relevant for the purpose of Objectors' challenge to the rezoning of the Property, Objectors were required to submit evidence of possible similarities. In their appeal to this Court, they have not pointed us to any place in the record where they made such a demonstration. Thus, the Board had no record evidence from which it could determine that the Property is characteristically similar to the tracts of land on the other side of Interstate 79. Although it appears that some of the residential non-adjoining tracts further north of the Property on Old Zuck Road also abut Interstate 79, those properties do not adjoin the Property

11

and, unlike the Property, do not appear to be hemmed in on three sides by non-residential uses.

With regard to the southern boundary of the Property, which is the neighboring Summit Township, Objectors have not pointed to any evidence or legal authority for the proposition that a zoning hearing board considering a spot zoning challenge should consider similarities between a re-zoned tract and an abutting area that is in a different municipality. Also again, Objectors offer no evidence of similarities.[3]

Additionally, while it appears from the record that Golf Course Road adjoins the Property to the north, an aerial photograph of the area submitted as ZHB Exhibit 38 (R.R. at 45A) indicates that the land opposite the Property to the north is the municipal golf course. Such land and the use of that land cannot be described as being similar in character or use to the present or proposed use of the Property. Objectors have not produced any evidence suggesting that the use of or development of the area to the immediate north is indistinguishable from the Property. Consequently, we conclude that Objectors did not offer any evidence regarding the area adjoining the Property to the immediate north that would support their claim that the Property is so similar to that adjacent area such that the Board was required to examine whether the rezoning of the Property was unjustified or irrational.

---

[3] Moreover, it appears from a review of Summit Township's zoning map, of which we take judicial notice, that the area of Summit Township adjoining the Property is zoned by that municipality as R-2. Thus, even if Objectors had established that the Property and the area adjoining the Property to the south were characteristically similar, the rezoning actually appears to result in a consistency of use and, therefore, no differential zoning treatment that would require justification on the part of the Township.

As to the area to the immediate west of the Property, again, the record is lacking in any evidence indicating that the area is characteristically similar to the Property. Exhibit 12 (R.R. at 22A), however, consists of another aerial photograph appearing to depict the area to the immediate west of the Property as part of the golf course. Thus, in actuality, the Property appears to be shaped like a trapezoid, surrounded on the north and west by the golf course, Summit Township to the south (which appears to be classified by that township as an R-2 zoning district), and by Interstate 79 and undescribed tracts further to the east. Therefore, the immediate area surrounding the Property appears to be completely dissimilar to the Property. Objectors, other than relying upon similarities of size between the Property and other tracts in the Township and describing the topography of Old Zink Road and Golf Course Road, have not submitted any evidence regarding the geographic or physical characteristics of the Property that would indicate that it is characteristically similar to the tracts surrounding it.

Consequently, in reviewing the Board's decision, it seems apparent to this Court that Objectors simply failed to satisfy their burden of proof regarding the similarity of the Property to the immediately surrounding area. As the transcript in the record demonstrates, during the hearing, Objectors focused almost entirely on their: (1) health, safety, and welfare arguments; and (2) the comprehensive plan designation of the Property as recreational. Despite the best efforts of the members of the Board to have Objectors focus on the characteristics of the Property and the surrounding area, the only characteristic of the subject property that the Objectors addressed was the size of the property, which they asserted was similar to other tracts in the area, and concerns regarding traffic. With regard to the size of the Property, the Board reached a different factual finding, which appears to be

13

supported by the record (and, consequently, is binding on this Court), that the Property is a relatively large-sized, vacant tract, a significant portion of which contains wetlands.

Because the standard applicable to spot zoning matters requiring a demonstration of justification for differential treatment of adjoining tracts applies only to rezoning where adjoining tracts have been shown to be characteristically similar, *Schubach*, *Realen*, and Objectors did not demonstrate that the rezoning of the Property reflected treatment of a tract characteristically similar to the surrounding area, there is no need to address the question of whether the rezoning was justified on health, safety, morals, and public welfare grounds. We note in passing, nevertheless, that the safety concern Objectors expressed relating to increased traffic is one that, as the members of the Board noted, is typically addressed in the developmental stage of a project.

Accordingly, we affirm the trial court's order.

_____
P. KEVIN BROBSON, Judge


Judge McCullough dissents.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael DiMattio, Eileen Tighe,        :
Drew Carlin and Nadia Carlin,          :
                         Appellants    :
                                       :
            v.                         :    No. 1051 C.D. 2015
                                       :
Millcreek Township Zoning Hearing      :
Board and Township of Millcreek        :

# **O R D E R**

AND NOW, this 21st day of September, 2016, the order of the Court of Common Pleas of Erie County is AFFIRMED.


_____
P. KEVIN BROBSON, Judge