# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re:  Appeal of Jose-Antonio Chacon    :
                                         :
From the Decision of City of             :     No. 1184 C.D. 2023
Philadelphia Zoning Board of             :
Adjustment and Dilover Tota              :     Submitted:  July 11, 2025
                                         :
Appeal of:  Dilover Tota                 :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge


***OPINION NOT REPORTED***

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                          **FILED:  September 19, 2025**


This matter returns to our Court after we remanded it in part to the Court of Common Pleas of Philadelphia County (Common Pleas).  Appellant Dilover Tota (Tota) has appealed from the order entered by Common Pleas on September 18, 2023, which granted Appellee Jose-Antonio Chacon's (Chacon) statutory zoning appeal.  In doing so, Common Pleas reversed the decision of the City of Philadelphia (City) Zoning Board of Adjustment (Board), which was issued on November 29, 2022, and granted Tota's variance application regarding a property located at 2301 East Cambria Street in Philadelphia (Lot).  During our first encounter with this appeal, we affirmed Common Pleas' order in part, reversed it in part, and remanded in part, with instructions that Common Pleas properly address Chacon's argument that Tota had failed to establish that the desired variances, if granted, would not impair adjacent properties' supply of light and air.  Common Pleas has complied

with this directive and, after thorough review, we affirm Common Pleas' order in part, regarding its disposition of the light and air adequacy issue, albeit on different grounds than those articulated by the lower court in its supplemental opinion.

## I. BACKGROUND[1]

We summarized the relevant facts as follows in our original opinion for this matter:

> Tota purchased the Lot in July 2021, with the intention of renovating the two-unit residential structure located thereon.[2] His plans were thrown into disarray approximately a month later, however, when the City demolished the structure without notifying Tota in advance and then placed a $30,000 lien on the Lot. Tota responded by filing a zoning/use permit application with the City's Department of Licenses and Inspections (L&I), through which he sought permission to erect a three-unit residential building with two roof decks on the Lot. L&I then denied Tota's application on May 23, 2022, whereupon Tota appealed that denial to the Board, requesting relief in the form of a use variance and multiple dimensional variances.[3] The Board subsequently convened a hearing regarding Tota's appeal on November 9, 2022, and voted 3-2 at the hearing's conclusion to grant Tota's desired variances.
>
> Chacon, who lives at 2305 Cambria Street, testified at the hearing in opposition to Tota's variance request. He then appealed the Board's decision to Common Pleas on December 29, 2022. Common Pleas took no additional evidence and, on September 18, 2023, granted Chacon's appeal, thereby reversing the Board's decision. This appeal by Tota to our Court followed shortly thereafter.
>
> > [2] The Lot's building originally contained one commercial unit and one residential unit, as allowed by right under the Property's CMX-1 zoning. The

---

[1] We base our background summary upon the Board's aforementioned findings of fact and conclusions of law, as well as upon Common Pleas' opinion in support of its September 18, 2023 order. *See generally* Board's Findings of Fact (F.F.) and Conclusions of Law (C.L.); Common Pleas Opinion, 9/18/23.

commercial unit was then converted to residential in 2001, establishing the two-unit residential structure that Tota purchased roughly 20 years later.

[3] Tota sought a use variance to allow him to build a three-unit residential building on the Lot, as well as dimensional variances regarding minimum open area, rear yard depth, and roof deck setback distance. Tota subsequently filed a proviso with the Board, which eliminated his request for the roof deck dimensional variance.

*In re: Appeal of Jose-Antonio Chacon From the Decision of City of Philadelphia Zoning Board of Adjustment and Dilover Tota* (Pa. Cmwlth., No. 1184 C.D. 2023, filed Jan. 29, 2025), slip op. at 1-2, 2025 WL 324734, at *1.

In disposing of Tota's appeal, we came to three conclusions. First, we agreed with Common Pleas that Chacon had standing to appeal the Board's decision; second, we agreed with Tota that Common Pleas erroneously addressed the merits of multiple appellate arguments that Chacon had waived by failing to raise them before the Board; third, we could not conduct appropriate appellate review of the one argument Chacon had properly preserved (regarding the variances' impact upon adjacent properties' supply of light and air), because Common Pleas had not considered and ruled upon that argument during its disposition of Tota's appeal. *Id.*, slip op. at 3-7, 2025 WL 324734, at *2-*3. Accordingly, we affirmed Common Pleas in part as to Chacon's standing, reversed Common Pleas in part regarding its disposition of the issues that Chacon had waived, and remanded this appeal in part with instructions that Common Pleas squarely address Chacon's adequate light and air argument. *Id.*, slip op. at 8-9, 2025 WL 324734, at *4. Common Pleas subsequently complied with our directive and, in doing so, explained that the Board had improperly disposed of the adequate light and air issue for three reasons: first, the record evidence clearly established that the proposed triplex would negatively

3

impact adjacent properties' supply of light and air; second, Tota's attorney admitted that this was the case during the course of the Board hearing and only addressed the light and air supply issue by noting that the owner of the neighboring property supported Tota's variance application; and third, the Board erroneously reversed the burden of proof by requiring Chacon "to demonstrate the extent of the [variances'] potential impact on his light and air." Common Pleas Suppl. Op., 3/27/25, at 4.

## II. DISCUSSION

In relevant part, Tota argues that Common Pleas improperly reversed the Board's decision, because the Board's pertinent conclusion, *i.e.*, that the requested variances would not prevent adjacent properties from receiving an adequate supply of light and air, was supported by substantial evidence.[2] *See* Tota's Br. at 33-36. We disagree. It is well-settled that "variance[s] should be granted sparingly and only under exceptional circumstances." *Rittenhouse Row v. Aspite*, 917 A.2d 880, 884-85 (Pa. Cmwlth. 2006). To that end, "[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious[,] and compelling." *Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 530 (Pa. Cmwlth. 2018). Pursuant to Section 14-303(8)(e)(.1) of the Philadelphia Zoning Code (Zoning Code),[3] the Board can grant

---

[2] Generally speaking, when a court of common pleas disposes of a statutory zoning appeal without considering any additional evidence, our standard of review "is limited to determining whether the zoning board committed an abuse of discretion or an error of law in rendering its decision." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014). A zoning board abuses its discretion when it issues factual findings that are not supported by substantial evidence. *DiMattio v. Millcreek Twp. Zoning Hr'g Bd.*, 147 A.3d 969, 974 (Pa. Cmwlth. 2016). Substantial evidence constitutes "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Borough of Fleetwood v. Zoning Hr'g Bd. of Borough of Fleetwood*, 649 A.2d 651, 653 (Pa. 1994).

[3] Section 14-303(8)(e)(.1) of the Zoning Code reads as follows:

The . . . Board shall grant a variance only if it finds each of the following criteria are satisfied:

> (.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in [Zoning Code] § 14-303(8)(e)(.2) (Use Variances) . . . in the case of use variances, or the criteria set forth in [Zoning Code] § 14-303(8)(e)(.3) (Dimensional Variances) . . . in the case of dimensional variances, have been satisfied;

> (.b) The variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue;

> (.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;

> (.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;

> (.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

> (.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

> (.g) The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

> (.h) The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

Zoning Code § 14-303(8)(e)(.1).

a variance only in the event it concludes that three prerequisites are satisfied: (1) a hardship exists that is unique to the property; (2) the granting of the requested variance would not adversely affect the public health, safety, or general welfare; and (3) the requested variance is the minimum necessary that will afford relief with the least possible modification from the terms of the Zoning Code. *Marshall*, 97 A.3d at 329.

In this instance, the Board addressed the light and air adequacy issue in a roundabout way. It noted that Chacon had "mentioned concerns about the impact of the project on his light and the view of his backyard due to the shorter rear yard[,]" but had "failed to provide any evidence to substantiate his claim that a structure two doors away from his home would negatively affect his light and the view of his backyard." Bd.'s Findings of Fact and Conclusions of Law, Conclusions of Law (C.L.), ¶20. The Board followed this by stating that "the portion of the proposed structure that encroaches into the required rear yard is only one story in height with a roof deck that was reduced in size via revised plans." *Id.* It then concluded that "[Tota] has established that the criteria under the Zoning Code were satisfied and that the grant of the requested use and dimensional variances was thus appropriate." *Id.*, ¶21.

These conclusions ignore Tota's abject failure to address the light and air criterion during the course of the Board hearing. Instead of explaining to the Board how the proposed variances, if granted, would not unduly affect adjacent properties' light and air supply, Tota's attorney elected to repeatedly emphasize that Tota's variance application was supported by the owner of a neighboring property,

as well as by other community members.  *See* Bd. Hr'g Tr., 11/9/22, at 3-5, 8-9.[4]

Though the Board's observations regarding the triplex's encroachment into the rear

---

[4] Tota's attorney provided the following relevant statements to the Board:

> I heard the [Board] Chair indicate that there were 18 people in opposition and 14 people in support.  We will review that letter.  It does say that it's a letter of opposition, but it was a tie of 14 to 14.  I believe of the 14 people that were in opposition four of them were nearby neighbors.  I wasn't involved with the community meeting.  I think if that would have happened, maybe we would have had a different result at the community meeting.  I just want to just make sure that we understand it was a 14-14 tie.

> When my client hired me, we indicated to have outreach because no one nearby -- four people voted, and only four people voted against it that were nearby neighbors.  So we made a concerted effort to reach the nearby neighbors and find out if that was an anomaly.  And my client got a petition of significant amount of signatures. I believe the -- said 35 signatures.

> And we also have online, I believe at least we spoke to them today, they said they would be online.  It's been a rather long hearing schedule, but as an officer of the court, I would represent that the owner of 2303 E[ast] Cambria, which is to the right of us, which will be most directly impacted by the proposed variance project, is in support of this project.

> So we did make an effort after that meeting to find out, again, why some of those neighbors who did not show up what their ultimate position was, and they were overwhelmingly in support of this project.

> . . . .

> [A]gain, 2303 E[ast] Cambria, which is next door to us, which would be most directly impacted by any alleged loss of light and air, has no objection to this project, and actually is in support of this project.

> . . . .

> [Given] that 2303 East Cambria, which would be most directly impacted by this project, has no issue with [Tota's open area

7

yard area are generally accurate, it remains that Tota neither provided the Board with specific evidence regarding how the variances would affect the adequacy of adjacent properties' light and air, nor did he even assert that the requested variances would not cause a negative impact upon the supply thereof; rather, *he simply claimed that a number of nearby property owners were in favor of his development proposal*. *See id*. Furthermore, the Board's treatment of this issue shows that it improperly expected Chacon to offer rebuttal evidence. Again, the burden is on the *applicant* to establish their entitlement to their desired variances. *Liberties Lofts*, 182 A.3d at 530. As Tota failed to present any evidence regarding how the variances would affect adjacent properties' light and air supply, Chacon had no obligation to offer any to the contrary.

### III. CONCLUSION

In accordance with the foregoing analysis, we conclude that the Board's determination regarding the requested variances' impact upon adjacent properties' supply of light and air was not supported by substantial evidence and, therefore, that the Board abused its discretion by granting Tota's application. Accordingly, we affirm Common Pleas' reversal of the Board's decision due to Tota's failure to

---

dimensional variance request], we ask that the [B]oard allow that variance to occur as well.

And then here's the Port Richmond letter, again, if you look at it, all meeting attendees, including affected addresses, 14 in support. All meeting attendees, including affected address[es], 14 opposed, which included [4] affected addresses nearby. I don't know what those addresses are. We did not get the list of addresses. But I will say that 2303 E[ast] Cambria, which is nearby or directly adjacent to us, is in support of this project.

Bd. Hr'g Tr., 11/9/22, at 3-5, 8-9.

establish his entitlement to his desired variances, albeit on a slightly different basis than that which Common Pleas articulated in its supplemental opinion.[5]

                                            **LORI A. DUMAS, Judge**

---

[5] Common Pleas appears to have buttressed its ruling regarding the light and air adequacy issue in part by reweighing the record evidence, as well as by making both credibility determinations and factual findings. *See* Common Pleas. Suppl. Op., 3/27/25, at 4 ("Review of the submitted plans and the publically available Google maps easily demonstrates that significantly changing the property height . . . to a higher three-story triplex, per [Tota's] proposed dimensions, would have a direct effect and blockage of light and air to the adjacent neighboring two-story row homes including . . . Chacon's residence."); *see id.* (stating that "[a] realistic view of [Tota's] application shows that the triplex] would directly impact . . . air and light [on Chacon's property][,]" as well as that "Chacon voiced a genuine, fact-based worry" about the proposed triplex's impact upon his property's supply of light and air). Common Pleas unmistakably erred in doing so. *See Marshall*, 97 A.3d at 331 (cleaned up) ("It is the function of the Board to determine whether the evidence satisfies the criteria for granting a variance. The Board, as fact-finder, is the sole judge of credibility. . . . An appellate court errs when it substitutes its judgment on the merits for that of a zoning board.").

Additionally, Common Pleas wrongly concluded that the Board had improperly placed the burden of proof upon Chacon regarding Tota's entitlement to the requested variances. *See* Common Pleas. Suppl. Op., 3/27/25, at 4. In context, the Board clearly did not rule that Chacon had the initial burden; rather, it merely highlighted Chacon's failure to offer rebuttal evidence. *See* Bd.'s Findings of Fact and Conclusions of Law, C.L., ¶¶20-21 (stating that "Chacon failed to provide any evidence to substantiate his claim that a structure two doors away from his home would negatively affect his light and the view of his backyard[,]" as well as that "[Tota] met his burdens of production and persuasion through credible testimony and evidence, which warrant the requested relief").

These errors are ultimately harmless, however, due to our determination that Tota failed to present *any* evidence regarding how the desired variances, if granted, would impact adjacent properties' supply of light and air. *See generally Appeal of Clarke*, 316 A.3d 1095, 1104 n.9 (Pa. Cmwlth. 2024) ("Under th[e] 'right for any reason' doctrine, a reviewing court has the authority to affirm a lower court's decision on any basis, so long as it is supported by the record.").

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

In re: Appeal of Jose-Antonio Chacon :
                                      :
From the Decision of City of          :  No. 1184 C.D. 2023
Philadelphia Zoning Board of          :
Adjustment and Dilover Tota           :
                                      :
Appeal of: Dilover Tota               :

**O R D E R**

AND NOW, this 19th day of September, 2025, it is hereby ORDERED that the Court of Common Pleas of Philadelphia County's (Common Pleas) September 18, 2023 order is AFFIRMED IN PART, as to Common Pleas' reversal of the City of Philadelphia Zoning Board of Adjustment's November 29, 2022 decision on the basis that Appellant Dilover Tota had failed to establish that his requested dimensional and use variances would not cause impairment of adjacent properties' supply of light and air.

_____
**LORI A. DUMAS, Judge**