IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Egidio Sciulli and Rosemary Sciulli,    :
                          Appellants    :
    :
    v.    :
    :    No. 333 C.D. 2024
City of Philadelphia    :    Submitted: November 6, 2025

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: December 17, 2025


Egidio Sciulli and Rosemary Sciulli (Sciullis) appeal from a February 15, 2024 order of the Court of Common Pleas of Philadelphia (Trial Court) that granted summary judgment in favor of the City of Philadelphia (City) on the Sciullis' tort claim. Upon review, we affirm the Trial Court's order.


**I. Background**

The Sciullis' complaint alleged that on February 13, 2020, Egidio Sciulli slipped and fell on an icy ridged composite tile, a detectible warning surface for the visually impaired, in the median while crossing West Moyamensing Avenue at its intersection with West Oregon Avenue in the City. Supplemental Reproduced Record (S.R.R.) at 9b-10b. The Complaint alleged negligence by the City related to the icy condition of the tile and averred that Egidio Sciulli suffered a torn rotator cuff as a result of the fall. *Id.* at 11b.

The Complaint sought damages in an amount not exceeding $50,000. S.R.R. at 11b-12b. Accordingly, the case proceeded to compulsory arbitration pursuant to Section 7361 of the Judicial Code,[1] 42 Pa.C.S. § 7361. *See* S.R.R. at 4b. The arbitrators entered an award in favor of the City, and the Sciullis appealed *de novo* to the Trial Court. *Id.*; *see also* Section 7361(d) of the Judicial Code, 42 Pa.C.S. § 7361(d).

Following discovery, the City filed a motion for summary judgment in the Trial Court. S.R.R. at 16b-22b. In the motion, the City argued that it could not be liable because it enjoyed governmental immunity under the portion of the Judicial Code commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act).[2] Further, the City explained that the so-called "street exception" to governmental immunity under the Tort Claims Act was the only potentially applicable exception to the City's immunity, and it would not apply here because caselaw has established that ice or snow is not a condition "of" the street within the meaning of the street exception. *Id.* at 21b (citing *Walinsky v. St. Nicholas Ukrainian Cath. Church*, 740 A.2d 318 (Pa. Cmwlth. 1999); *see also* Section 8542(b)(3)(iii) of the Tort Claims Act, 42 Pa.C.S. § 8542(b)(3)(iii). The City further observed that, in any event, the Sciullis did not allege that any exception to immunity was applicable. S.R.R. at 20b-21b. Moreover, the City averred that, even if the street exception were otherwise applicable, the City could not be liable to the Sciullis because the section of West Moyamensing Avenue where Egidio Sciulli fell is a state highway, not a street owned by the City, and there is no contract between the City and the Commonwealth of Pennsylvania requiring the City to maintain the state-owned part

---

[1] 42 Pa.C.S. §§ 101-9914.

[2] 42 Pa.C.S. §§ 8541-8542.

2

of the street. *Id.* at 18b-20b & 41b-42b; *see also* Section 2(11) of what has been referred to as the State Highway Act of 1941 (Highway Act),[3] 36 P.S. § 961-2(11).[4]

The Trial Court issued an order granting the City's summary judgment motion. The Sciullis then appealed to this Court.

## II. Issues

On appeal,[5] the Sciullis present three issues for review, which we reorder and summarize as follows.

First, and related to their other two arguments, the Sciullis maintain that an issue of fact precluded summary judgment in that they dispute the City's assertion that it has no contract with the Commonwealth to maintain the relevant portion of West Moyamensing Avenue. We note that the Sciullis do not argue that the City is not entitled to governmental immunity generally. Although they also do not

---

[3] Act of May 7, 1937, P.L. 589, *as amended* by the Act of July 10, 1941, P.L. 345, 36 P.S. §§ 961-1 – 961-16 (repealed in part).

[4] In its new matter filed in response to the Sciullis' complaint, the City additionally averred that the complaint was barred because the Sciullis failed to give the written notice of their claim within six months after it accrued, as required by Section 5522 of the Judicial Code. *See* 42 Pa. C.S. § 5522 (requiring written notice to a municipality, within six months after an injury, of intent to commence a civil action, and providing that if such advance notice is not provided, any claim filed thereafter shall be dismissed "and the person to whom any such cause of action accrued for any injury to person or property shall be forever barred from proceeding further thereon . . ."). Notably, the original record contains no reply by the Sciullis to the City's new matter. The City, however, did not include the alleged notice defect as a basis for relief in its subsequent motion for summary judgment.

[5] "When reviewing a grant of summary judgment, this Court's standard of review is *de novo*, and our scope of review is plenary." *Brown v. City of Oil City*, 263 A.3d 338, 342 n.1 (Pa. Cmwlth. 2021). We apply the same summary judgment standard as the Trial Court, in that summary judgment is proper only "where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (additional quotation marks and citation omitted).

3

expressly posit that any exception to that immunity applies here, such a position may be inferred from their arguments concerning the City's alleged responsibility to maintain the portion of West Moyamensing Avenue where the incident occurred. The Sciullis point to a settlement agreement in an unrelated federal action, suggesting that it "demonstrated that there is a contract." Sciullis' Br. at 11 (citing *Liberty Res., Inc. v. City of Phila.*, Civ. Action No. 19-3846 (E.D. Pa., Oct. 14, 2022), Doc. # 144).[6] The Sciullis ask this Court to take judicial notice of the federal settlement.

Second, the Sciullis assert that they were denied due process because they were not able to cross-examine the City's witnesses. This argument appears to concern the City's contention that it does not own or maintain the part of West Moyamensing Avenue where Egidio Sciulli fell.

Third, the Sciullis contend that the City violated the case management order in this matter by amending a subpoena after the closing date of discovery. This argument appears to be related to their first argument, in that it concerns the City's denial that it installed or was responsible for the detectible warning tile in the median. The Sciullis insist that the City agreed to install the detectible warning tile pursuant to the settlement agreement in the federal case.

**III. Discussion**

Section 8541 of the Tort Claims Act provides: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on

---

[6] The Sciullis' brief apparently cites the preliminary approval of the settlement agreement in the federal action, which is not available through either Lexis or Westlaw. The federal court's final approval of the settlement is referenced below. *See Liberty Res., Inc. v. City of Phila.*, Civ. Action No. 19-3846, 2023 U.S. Dist. LEXIS 75914 (May 13, 2023).

4

account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Section 8501 of the Judicial Code defines a "local agency" as "a government unit other than the Commonwealth government." 42 Pa.C.S. § 8501. As defined in Section 102 of the Judicial Code, a "government unit" includes "any government agency," and a "government agency" is defined as including "any political subdivision." 42 Pa.C.S. § 102. Thus, the City, as a political subdivision, is a "local agency" entitled to immunity under the Tort Claims Act, unless a specifically listed exception to immunity applies.

The exceptions to governmental immunity are set forth in Section 8542 of the Tort Claims Act. 42 Pa.C.S. § 8542(b). The exceptions relate to negligence involving, in summary, (1) the operation of a motor vehicle in a local agency's possession or control; (2) a local agency's care, custody, or control of the personal property of others; (3) the care, custody or control of real property (expressly excluding, *inter alia*, streets) in the possession of a local agency; (4) a dangerous condition of trees, traffic controls, or street lights or street lighting systems under the care, custody or control of a local agency; (5) a dangerous condition of a utility service facility owned by a local agency; (6) *a dangerous condition of a street owned by a local agency, or of a street owned by the Commonwealth where the agency has a written contract with the Commonwealth for the maintenance and repair of the street*; (7) a dangerous condition of a sidewalk owned by a local agency; (8) the care, custody, and control of animals in the possession or control of a local agency, such as police horses and dogs; and (9) certain sexual abuse arising from negligence of a local agency. 42 Pa.C.S. § 8542(b). Exception (6), relating to streets, is manifestly the only exception to governmental immunity that is even

5

arguably at issue in this case. Thus, to overcome the City's immunity, the Sciullis had to establish that the City either owned or had a written contract with the Commonwealth to maintain and repair the section of West Moyamensing Avenue where Egidio Sciulli fell. They failed to do so.

In support of its motion for summary judgment, the City cited and produced a copy of Section 2(11) of the Highway Act, which designates the city streets taken over by the Commonwealth, including, in the City, the following:

> (11) Beginning at an intersection of South 80th Street with Penrose Ferry Road, thence northeasterly on Penrose Avenue to an intersection with Moyamensing Avenue, thence over Moyamensing Avenue to an intersection with South Broad Street, a distance of about 3.50 miles.

36 P.S. § 961-2(11). The City's official interactive street map indicates that the intersection of Oregon Avenue with West Moyamensing Avenue, the location at which Egidio Sciulli fell, lies between the intersection of Penrose Avenue with West Moyamensing Avenue and the intersection of West Moyamensing Avenue with South Broad Street. *See* https://openmaps.phila.gov/ (last visited December 16, 2025).[7] Thus, under Section 2(11) of the Highway Act, the Commonwealth, not the City, indisputably owns the street where Egidio Sciulli fell. *See Leiphart v. City of Philadelphia*, 972 A.2d 1239, 1243 (Pa. Cmwlth. 2009) (*en banc*) (observing that a

---

[7] Rule 201(b)(2) of the Pennsylvania Rules of Evidence allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pa.R.E. 201(b)(2). This Court has previously taken judicial notice of a township zoning map as constituting such a fact. *See Dimattio v. Millcreek Twp. Zoning Hearing Bd.*, 147 A.3d 969, 976 n.3 (Pa. Cmwlth. 2016). The City's interactive map is likewise a proper subject of judicial notice. *See also Lyons v. City of Philadelphia*, 632 A.2d 1006, 1009 (Pa. Cmwlth. 1993) (observing that "the legal status of a road as a state highway is a matter of state law, and not a fact to be admitted or denied . . ."); *Jackson v. Se. Pa. Transp. Auth.*, 566 A.2d 638, 641 (Pa. Cmwlth. 1989) (concluding that a "trial court did not err in taking judicial notice of the State Highway Act of 1961" and further observing, "as a rule universally recognized," that courts will take judicial notice of statutes).

6

state highway within the City is not owned by the City, but by the Commonwealth, which must repair and maintain it). Further, the median is deemed to be part of the state highway. *See Slough v. City of Philadelphia*, 686 A.2d 62, 64 (Pa. Cmwlth. 1996) (holding that a median was part of the state highway that the Commonwealth was responsible to maintain) (first citing 75 Pa.C.S. § 102; and then citing 67 Pa. Code § 211.1), *aff'd per curiam*, 720 A.2d 485 (Pa. 1998). Because the City does not own the street at issue, it is immune from liability. *See Lyons v. City of Philadelphia*, 632 A.2d 1006, 1009 (Pa. Cmwlth. 1993).

Notwithstanding the Commonwealth's clear ownership of the street at issue, the Sciullis insist that a contract existed between the City and the Commonwealth for the City to maintain and repair the street. However, they failed to produce evidence before the Trial Court to create a genuine issue of material fact on that question.

The City pointed out that the record contained no evidence of any contract between itself and the Commonwealth regarding repair and maintenance of the street and detectible warning surface at issue. The Sciullis argue that this constituted only "evidence of no evidence" and that they were denied any opportunity to test the veracity of such "evidence." Sciullis' Br. at 8. We discern no merit in this argument. The Sciullis could have sought and obtained a copy of any alleged contract between the City and the Commonwealth for maintenance of the street at issue, through a discovery request, a request for a public record under Section 701 of the Right-to-Know Law,[8] 65 P.S. § 67.701, or both. They produced

---

[8] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104. Section 701 of the Right-to-Know Law provides:

7

no such alleged contract in their opposition to the City's summary judgment motion. Instead, the Sciullis ask this Court to take judicial notice of certain terms of a settlement stipulation in a federal action between private plaintiffs and the City relating to installation of detectible warning surfaces for the visually impaired like the surface at issue here. Sciullis' Br. at 11 n.2 (citing *Liberty Res.*). We decline to do so for several reasons.

First, a court generally will not take judicial notice of the terms of a settlement in another case. This Court, quoting the Pennsylvania Supreme Court, has explained:

> A court is bound to decide the case before it based upon the evidence presented to it by the parties; it has no authority to seek out additional testimony in the records of unrelated cases on the matters at issue before it. [The Pennsylvania Supreme] Court, in a case involving a claim of *res judicata*, noted that ["]a court may not ordinarily take judicial notice in one case of the records in another case even though the case arose in the same court and the contents of those records are known to the court.["] *Callery v. Mun*[.] *Auth*[.] *of* [*Twp.*] *of Blythe*, . . . 243 A.2d 385, 386 ([Pa. ]1968). *A fortiori*, a court may not base a decision upon evidence of record in another unrelated case. *Cf. Commonwealth v. Young*, . . ., 317 A.2d 258, 264

---

(a) GENERAL RULE.— Unless otherwise provided by law, a public record, legislative record or financial record shall be accessible for inspection and duplication in accordance with this act. A record being provided to a requester shall be provided in the medium requested if it exists in that medium; otherwise, it shall be provided in the medium in which it exists. Public records, legislative records or financial records shall be available for access during the regular business hours of an agency.

(b) CONSTRUCTION.— Nothing in this act shall be construed to require access to any computer either of an agency or individual employee of an agency.

65 P.S. § 67.701.

([Pa. ]1974) (["]An appellate court may consider only the facts which have been duly certified in the record on appeal.["]).

*Muretta v. Williams Twp. Bd. of Sup'rs* (Pa. Cmwlth., No. 1933 C.D. 2011, filed Oct. 24, 2012),[9] slip op. at 28-29 (quoting *Commonwealth v. DePasquale*, 501 A.2d 626, 630, n. 4 (Pa. 1985) (additional quotation marks omitted)). Here, the Sciullis ask this Court to take judicial notice of a settlement in a completely unrelated case in a federal court. Judicial notice in this situation is not appropriate.

Moreover, the settlement agreement expressly applies only to streets in the Local Streets Network. Sciullis' Br., Appendix F at 12. The settlement agreement defines the term "Local Streets Network" as "the network of streets within the City's geographic boundaries for which the City is solely responsible for resurfacing and funding as identified in the City's geographic information system." *Id.* at 5. Accordingly, any intersection owned by the Commonwealth, such as the intersection at issue here, is expressly excluded from the federal settlement agreement unless there is an agreement between the City and the Commonwealth for the City to maintain the intersection. The settlement agreement itself is not evidence of such an agreement between the City and the Commonwealth. The settlement agreement is between the City and private parties. It is not a contract between the City and the Commonwealth by which the City agrees to maintain any streets or medians owned by the Commonwealth, including detectible warning surfaces.

Further, the settlement agreement offered by the Sciullis post-dates Egidio Sciulli's injury by well over two years. As set forth above, Egidio Sciulli fell in February of 2020. The United States District Court for the Eastern District of

---

[9] We cite this unreported opinion as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Pennsylvania approved the settlement agreement initially on October 19, 2022 and, after adjudicating objections to the proposed settlement, entered an order of final approval on May 13, 2023. *Liberty Res., Inc. v. City of Phila.*, Civ. Action No. 19-3846, 2023 U.S. Dist. LEXIS 75914 (May 13, 2023). Thus, the settlement agreement has no relevance here for this additional reason.

Finally, the attachment by the Sciullis of a purported excerpt from the settlement agreement is presented without context and, as such, is incomprehensible. There is no indication that the intersection at issue in this case is on the list, what the list means, or indeed, that the page presented is even part of the settlement agreement. Simply put, as presented, it is meaningless.

In short, in order to overcome the City's immunity, the Sciullis, as the plaintiffs, had the burden to demonstrate that a contract existed between the City and the Commonwealth for the City to maintain the median at issue. The Sciullis offered no evidence whatsoever relevant to that issue. Accordingly, they failed to establish a genuine issue of material fact, and the Trial Court properly entered summary judgment in favor of the City. *Accord Leone v. Dep't of Transp.*, 780 A.2d 754, 758 (Pa. Cmwlth. 2001) (affirming the entry of a nonsuit in favor of the City where the plaintiff failed to produce any evidence of a contract for the City to repair and maintain a state highway).

The Sciullis also insist they were denied due process because they were not able to cross-examine any City witnesses. This argument is without merit. If the Sciullis wished to examine witnesses verbally, their recourse was to take depositions during discovery, which they evidently did not do. *See* Rule 4007.1 of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 4007.1.

10

The Sciullis further assert that the City violated a case management order by revising a subpoena several days after the discovery deadline had passed. The original record demonstrates that the City provided notice to the Sciullis on December 8, 2023 of its intent to serve the addendum to the subpoena. Original Record at 72.[10] The record, however, contains no objection by the Sciullis to the proposed service of the addendum after the close of discovery. Therefore, any such objection was waived and cannot be raised for the first time on appeal. *See Porta v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1950 C.D. 2008, filed May 12, 2009), slip op. at 8 n.4 (observing that failure to object to untimely issuance of a subpoena waived the objection). Accordingly, this argument is waived.

## IV. Conclusion

Based on the foregoing discussion, the Trial Court's order granting summary judgment in favor of the City is affirmed.

 

_____
CHRISTINE FIZZANO CANNON, Judge

---

[10] This citation to the original record uses the electronic page number.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Egidio Sciulli and Rosemary Sciulli, :
                      Appellants :
                                 :
          v. :
                                   :   No. 333 C.D. 2024
City of Philadelphia :

# **O R D E R**

AND NOW, this 17th day of December, 2025, the February 15, 2024 order of the Court of Common Pleas of Philadelphia County granting summary judgment in favor of the City of Philadelphia is AFFIRMED.

 

_____
CHRISTINE FIZZANO CANNON, Judge